UNITED STATES, Appellee

v.

CLARENCE HOLIDAY, Basic Airman, U. S. Air Force, Appellant

4 USCMA 454, 16 CMR 28

No. 3659

Decided July 2, 1954

COL A. W. Tolen, USAF, and MAJ Peter Portrum, USAF, for Appellant.
LT COL Harold Anderson, USAF, and CAPT Giles J. McCarthy, USAF, for Appellee.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

Basic Airman Clarence Holiday, the accused, was convicted of three separate offenses of failing to obey lawful orders in violation of Article 92, Uniform Code of Military Justice, 50 USC § 686; assault upon an Air Policeman in the execution of his duties; and communicating a threat to an Air Policeman, both in violation of Article 134 of the Code, supra, 50 USC § 728. He was sentenced to dishonorable discharge, total forfeitures, and confinement at hard labor for five years and six months. The convening authority reduced the period of confinement to three years, but otherwise approved the findings and sentence. Following affirmance by a board of review, we granted the accused's petition for further review to consider whether the accused communicated a threat, and whether the communication of a threat constitutes a violation of Article 134 of the Code, supra.

Since we are concerned here only with the offense of communicating a threat, the circumstances of the other crimes are immaterial and will not be considered.

The evidence presented to the court-martial shows that the accused, a prisoner in an Air Force Stockade, had possession of playing cards—a violation of stockade regulations. When this infraction was reported to the supervisors of the confinement facility, Airman Satkunas, an Air Policeman, was directed to enforce the regulation by securing the prohibited cards. Upon his arrival at the cell block in which the accused

was confined, he demanded the contraband items. The accused at first denied that he had any playing cards, but when he was brought from his cell to be searched, he drew the cards from his pocket and proceeded to destroy them. Considering the incident closed, Satkunas ordered the accused to return to his cell. However, the accused failed to comply with this order and Satkunas found it necessary to lead him back after obtaining a firm grasp on his arm. At this the accused declared "If I'm not walking fast enough for you, don't push me or I'll knock your . . . teeth down your throat."

Upon these facts, the accused was charged with a violation of Article 134, supra, in a specification which alleges that he,

". . . did . . . wrongfully communicate to Airman Second Class Bronius Satkunas . . . a person then having and in the execution of Air Police duties, a threat to injure the aforesaid Airman Second Class Bronius Satkunas, by saying to him, the said Airman Second Class Bronius Satkunas, 'I'll knock your . . . teeth down your throat.'"

These allegations, the accused contends, do not describe an offense under Article 134, supra, and are insufficient to set out an offense under any other Article of the Code. This contention is predicated upon the theory that communicating a threat constitutes a crime only when combined with other circumstances such as those contemplated by Articles 89, 91, 127, and 128 of the Code, supra.[1]

Article 134, supra, proscribes three general types of misconduct: (a) Disorders and neglects to the prejudice of good order and discipline, (b) Conduct of a nature to bring discredit upon the armed forces, and (c) Crimes and offenses not capital. The offense with which we are here concerned occurred within the confines of an Air Force stockade and is not alleged as a violation of a specific enactment of Con-

gress. Therefore, we need not consider its possible relationship to the second and third classes of offenses included in the Article. We are concerned here only with the first category of offenses set out in the relevant article.

The history of this Article and its full meaning and limitations have been ▮▮▮▮▮ the subject of numerous decisions of this Court and no further exposition thereof is now necessary. Suffice it to say that the Article contemplates only the punishment of that type of misconduct which is directly and palpably—as distinguished from indirectly and remotely—prejudicial to good order and discipline. United States v. Snyder, 1 USCMA 423, 4 CMR 15; United States v. Herndon, 1 USCMA 461, 4 CMR 53; United States v. Frantz, 2 USCMA 161, 7 CMR 37.

As used in both military and civilian law, the term "threat" connotes:

"An avowed present determination or intent to injure presently or in the future." [United States v. Metzdorf, 252 Fed 933 (Mont); United States v. Sturmer, 1 USCMA 17, 1 CMR 17.]

At common law, simple threats, unaccompanied by an intent thereby to influence the action of the person threatened, did not constitute a crime. The potential harm presaged by such utterances, however, was clearly recognized, and one guilty of such conduct was required to furnish surety conditioned on his future peaceful behavior. United States v. Metzdorf, supra. An appreciation of the evil portents of this action is also reflected in modern legislation. See Code of District of Columbia, Title 22, Section 507.[2]

No specific provision is made in the Uniform Code, supra, for the offense of simple threats, but the Manual for Courts-Martial, United States, 1951, contains two references thereto. The first is found in the Table of Maximum

---

[1] 50 USC §§ 683, 685, 721, 722.

[2] "Any person convicted of threats to do bodily harm shall be required to give bond to keep the peace for a period not exceeding six months, and in default of bond may be sentenced to imprisonment not exceeding six months."

Punishments, paragraph 127c, providing a penalty of dishonorable discharge, total forfeitures, and confinement at hard labor for three years for the offense of "threats, communicating." The second reference is found in Appendix 6c thereof, in which a recommended form of specification of this offense is set out. That form is as follows:

"171. In that .... did, (at) (on board) . . ., on or about ..... 19.., wrongfully communicate to .... a threat to (injure .... by ....) (accuse .... of having committed the offense of ....) (....)."

The recommended form contains no reference to any intent to influence the action of the person threatened. So, we conclude that it contemplates a simple threat situation. The specification in the instant case sets out each material allegation of this form and adds averments indicating that the threats were directed to an Air Policeman then in the execution of his duties. The additional allegations do not change the gist of the offense, however. They merely describe circumstances of aggravation supplying a reasonable basis for the imposition of a more severe sentence. See United States v. Beene, 4 USCMA 177, 15 CMR 177.

Applying the test delineated in previous decisions of this Court, we find, in the communication of a threat to any person in the military establishment, direct and palpable prejudice to good order and discipline of the armed forces. Such conduct, if committed in the civilian community, might result in a criminal proceeding in which the guilty party would be required to furnish bond, or be imprisoned, in default thereof. Obviously no such sanction is put upon innocent actions. In the military service, the communication of a threat to injure another is certainly no less serious. However, it cannot be treated in the manner generally provided for in the civilian sphere, for no procedure is available to the services for requiring one subject to the Code to post a bond. The only course open to a military commander is the invocation of the punitive sanctions provided by Article 134, supra. Moreover, many factors indicate that this offense is relatively more serious when committed by one subject to the Code. An executed threat to harm an officer constitutes a violation of Article 90, supra, and bears a maximum penalty of dishonorable discharge, total forfeitures, and confinement at hard labor for ten years. If committed in time of war, the death penalty may be imposed. Executing a threat against a warrant officer involves a penalty of confinement for five years, with the usual accessories. In the case of a noncommissioned officer, or person in the exercise of law enforcement duties, the prescribed penalty is confinement for one year with the usual accessories. However, if carried out against the person of one not occupying a special office, and not involving elements of aggravation arising out of either the means employed, or the results produced, the penalty is limited to confinement for six months, and a partial forfeiture for a like period. It is evident that the elimination of the threat which precedes the assault in such cases, effectively eliminates the assault itself. Thus, it is clear that the provision for a maximum penalty in simple threat cases, in some instances less than might be imposed for executed assault and greater in others, is designed to prevent such threats regardless of the class of individuals against whom directed. We find no abuse of discretion in establishing this penalty.

Concluding that the offense alleged possesses the characteristics of the misconduct described in the first subdivision of Article 134, supra, we turn to consider the second branch of the defense argument. In support of its position, the defense relies upon the following language of this Court, in United States v. Norris, 2 USCMA 236, 8 CMR 36:

"It is our view that, in accordance with the remarks of Professor Morgan, quoted earlier, Article 134 should generally be limited to military offenses and those crimes not specifically delineated by the punitive Articles. . . . As the Manual itself notes, there is scarcely an irregular or improper act conceivable which may not be regarded as in some

**457**

indirect or remote sense prejudicing military discipline under Article 134, Manual for Courts-Martial, United States, 1951, page 381. We cannot grant to the services unlimited authority to eliminate vital elements from common law crimes and offenses expressly defined by Congress and permit the remaining elements to be punished as an offense under Article 134."

Citing the action taken in the Norris case, supra, and in United States v. Johnson, 3 USCMA 174, 11 CMR 174, the accused urges upon us the theory that all aspects of threats were included within Articles 89, 91, 127, and 128, supra.

Articles 89 and 91(3) prohibit disrespect toward a superior officer or toward a warrant officer, noncommissioned officer, or petty officer while in the execution of his office. Unquestionably, threatening such an individual is *per se* disrespect. United States v. Richardson, 2 USCMA 88, 6 CMR 88. However, maintaining respect for a certain class of persons is not the sole objective of requiring punishment for threats. A principal purpose of such punishment is to maintain order in the military community and to prevent outbreaks of violence therein.

Article 127, supra, refers to the offense of extortion and requires that the communication of a threat be accompanied by an intention to obtain something of value or any acquittance, advantage, or immunity of some description. As noted above, there is no necessity for establishing a motivation for a "simple threat."

Article 128 refers to assaults. The distinguishing feature of these offenses is an overt act committed in pursuance of an attempt or offer to do bodily harm to another. United States v. Norton, 1 USCMA 411, 4 CMR 3. The Manual's discussion of these offenses clearly indicates that in the military, as well as in the civil law, mere threatening language does not constitute the offense described in this Article. Manual for Courts-Martial, United States, 1951, paragraph 207a. In the case of a threat, however, the offense is complete

when the avowed determination to injure another is announced.

Our attention has also been directed to the provisions of Article 117 of the Code, supra, 50 USC § 711, penalizing the use of provocative speeches and gestures. This Article is designed to prevent the use of violence by the person to whom such speeches and gestures are directed, and to forestall the commission of an offense by an otherwise innocent party. The communication of a threat, however, forecasts violent action by the person employing it. Thus, the prevention of greater harm, by the guilty person, is the purpose of its punishment.

In its concluding argument the defense urges that if an accused were to preface an actual assault and battery with a threat to commit that offense then he could be subjected to a far greater penalty. Numerous other instances of disparity between the penalty for the completed offense and that threatened are suggested to us. This disparity, it is contended, reduces the Government's position here to an absurdity and conclusively demonstrates the necessity for applying the *Norris* and *Johnson* view to this case. This argument completely overlooks two vital considerations. First, the President, in accordance with his authority in such matters, has prescribed the applicable maximum for communication of a threat. As indicated above, we find no abuse of discretion in his exercise of that authority in this instance. Secondly, the responsibility for the imposition of a specific sentence in a particular case rests primarily upon the court-martial. United States v. Brasher, 2 USCMA 50, 6 CMR 50. The specific penalty assessed by the court-martial must, in every case, be legal, appropriate, and adequate, and should be arrived at only after mature consideration of all relevant circumstances. Manual for Courts-Martial, United States, 1951, paragraph 76. Courts are further enjoined by paragraph 127c of the Manual, supra, to restrict imposition of the greatest permissible punishment to cases involving aggravating circumstances sufficient to justify such severity. Should the sentence adjudged by

the trial court appear inappropriate under the circumstances disclosed by the record of trial, the board of review is empowered by Article 66(c) of the Code, supra, 50 USC § 653, to reduce it to a sentence which is appropriate, in fact. Should these safeguards prove inadequate and a grossly excessive sentence is affirmed by a board of review, then this Court may be called upon to determine its power to set it aside. Beyond that, however, any argument designed to demonstrate the disparity between prescribed maximum penalties is more aptly directed to the Executive than to the Judicial Branch of the Government.

For the foregoing reasons, Articles 89, 91, 117, 127, and 128, supra, were not designed by Congress to deal with the type of accusation before us here. Therefore, such cases as United States v. Norris, supra, and United States v. Johnson, supra, are hardly applicable. Since communicating a threat is not otherwise provided for in the Uniform Code, it is properly alleged as a violation of Article 134, supra.

We turn now to a consideration of the final issue in this case, to wit, whether the language of ▆ the accused constitutes a threat. Determination of this issue requires but brief consideration. The accused was taken from his cell for a single legitimate purpose. When that purpose was effected, his only proper place was in his cell. Upon his refusal to return to it, the Air Policeman was justified in using reasonable force to return him to his place of confinement. Although the prefatory statement "Don't push me" implies a condition, it does not negative a present determination to injure. The condition, if any, was one the accused had no right to impose. See United States v. Stickrath, 242 F 151 (SD Ohio); United States v. Jasick, 252 F 931 (ED Mich); United States v. Metzdorf, supra.

The decision of the board of review is affirmed.

Judge LATIMER concurs.

BROSMAN, Judge (dissenting):

I cannot agree with the result reached by my brothers—particularly in view of the circumstance that, according to them, an accused ▆ person may properly receive as much as three years' confinement at hard labor for communicating a threat, whereas in most instances this quantum of punishment is substantially in excess of that which could lawfully be imposed on him for carrying the identical threat into execution.

II

The Manual for Courts-Martial, U. S. Air Forces, 1949, paragraph 177, contains a discussion of Article of War 99, the precursor of Article 117, Uniform Code of Military Justice, 50 USC § 711. That treatment refers to "Reproachful, provoking or *threatening* words or gestures of a nature to induce breaches of the peace." (Emphasis supplied.) Thus in some sense at least, the communication of threats was assimilated to the use of language tending to produce public disorders. The maximum confinement imposable for a violation of Article of War 99 was three months. Manual, supra, Table of Maximum Punishments, paragraph 117c, page 137.

No offense of communicating a threat is found in the 1949 Manual's Table of Maximum Punishments under the heading of Article of War 96, the forerunner of the Uniform Code's Article 134, 50 USC § 728. However, threatening to strike a sentinel carried four months' confinement. Under Article of War 68, threatening a warrant or noncommissioned officer engaged in quelling a disorder permitted six months' confinement; and the punishment for threatening personnel of the same grades when in the execution of their official duties ran to the same figure. In the Forms for Charges and Specifications Appendix of the 1949 Manual I find under Article of War 96 no specification skeleton which seems to involve threats, other than those directed toward a sentinel.

The legislative history of the Uniform Code offers little of value for the present purpose. Article 117 is shown as the descendant of Article of War 90. Hearings before the House Committee

on Armed Services, 81st Congress, 1st Session, on H. R. 2498, page 1231. However, the chairman of the Forrestal Committee, Professor E. M. Morgan, Jr., appeared to be unenthusiastic over the inclusion of Article 117, but explained that it might assist in reducing "horseplay." Hearings before the Senate Committee on Armed Services, 81st Congress, 1st session, on S. 857 and H. R. 4080, page 50. The House Hearings do, however, mention a proposal for the inclusion of Article 9 (13), Articles for the Government of the Navy, which penalizes one who "uses provoking or reproachful words or gestures toward any person in the Naval service, or strikes or *threatens to strike,* or assaults any person." (Emphasis supplied.) Moreover, Article 8 (3) of the same superseded source provided for the punishment of one "who quarrels with, strikes, or assaults, or uses provoking or reproachful words, gestures, or *menaces* towards, any person in the Navy." (Emphasis supplied.)

Working backward to the 1928 and 1917 Manuals adds nothing of significance—save to reveal that these Executive Orders did not purport to recognize the offense of communicating a threat as such. The detailed historical background of Article of War 90—and thus of Article 117, Uniform Code—is set out by an Air Force board of review in United States v. Carter [S–827], 3 CMR (AF) 801.

### III

From the foregoing, I must conclude that the present Article 117 has preempted the field of threat communication, with the result that under the doctrine of United States v. Norris, 2 US CMA 236, 8 CMR 36, there is left no area within which Article 134 may operate. This is true both because of the close logical relationship of "threats" to "provoking or reproachful words"—one basis for the proscription of threats is their tendency to produce breaches of the peace—and because the predecessors of Article 117 tended to encompass threats within their ambits. However, were it to be assumed that the last-named Article alone does not embrace the entire threat area, I should say that it—plus the several additional

Code provisions with respect to assault, extortion, disorderly conduct, and disrespect—does fully cover that ground.

Whatever doubts may remain will be resolved, I believe, by a comparison of the maximum punishments set up in the 1951—the current—Manual. According to its terms, the communication of a threat carries three years' confinement, together with a dishonorable discharge and total forfeitures—just as does extortion. Exactly *twelve* times as much confinement at hard labor may be imposed under the Manual's Table for a threat to assault as for the assault itself—and *six* times as much as for the assault plus a battery. This can be regarded as nothing less than downright ridiculous.

It is true that—within the Code—the President has full power to establish maximum punishments. However, the *incongruity of the sentence imposable* under the Manual pursuant to a finding of guilty here certainly suggests that this "crime" of communicating a threat simply does not fit into the framework of law established by Congress. This circumstance is not to be ignored in determining whether the national legislature intended to cover entirely the communication of threats under Articles other than 134. Moreover, the Government labors under a substantial burden when it seeks to justify an extremely heavy penalty assessable—allegedly and solely—under the language of the Manual and never before recognized in military law.

The majority of the Court indicates that the severe penalty for communicating a threat is essential for the reason that military law offers no procedure for requiring a peace bond—like that available in civilian courts. On the other side of the shield it may be said, however, that a commanding officer may lawfully restrict to a reasonably prescribed area any military person who has threatened another—and, on the victim's request, he may issue an order to the aggressor to remain apart from the former, save as demanded by military duties. In any event, if an interstice exists, it should—I believe—be left to Congress to stop it.

While I do not believe that communicating a threat constitutes an offense, as such, I am sure that threatening an air policeman in the execution of his office does amount to criminal conduct. The protection of military policemen and sentinels against threats, assaults, and the like, has consistently been treated under the "general article"— that is, under Article 134, Article of War 96, and so on. I find no intent on the part of Congress to preempt through other specific Articles the protection of such persons from menaces and insubordination, and thus I have no doubt that power remains to punish therefor under Article 134. I would suppose that the penalty could rise no higher than dishonorable discharge, total forfeitures, and confinement at hard labor for one year—this by analogy to assault on such an official person. It is arguable that a simple disorder would constitute the preferable analogy. Because of my dissenting position here, I see no point in reaching a conclusion in this phase of the matter.

## IV

Accordingly, I would return the record here to The Judge Advocate General, United States Air Force, for reference to a board of review for reconsideration of sentence.