UNITED STATES, Appellee

v

WILTON E. HAZARD, JR., Private E-1, U. S. Army, Appellant

8 USCMA 530, 25 CMR 34

No. 9713

Decided December 27, 1957

*First Lieutenant Philip L. Evans* argued the cause for Appellant, Accused. With him on the brief was *Major Edward Fenig.*

*First Lieutenant Chester F. Relyea* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Thomas J. Newton.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

This appeal brings up for review certain alleged errors in regard to one of two charges of which the accused was convicted. The charge is wrongfully communicating a threat, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934.

The accused was a prisoner in the post stockade. During an area cleaning assignment outside the stockade he gave the guard some difficulty. The guard reported the matter to the work detail sergeant. Later as the work party was mounting a truck to return to the stockade, the accused said to the guard, "I'd better not catch you outside."

At the trial the the law officer instructed the court-martial on the elements of the offense as follows:

"The court is further advised that to find the accused guilty of the Specification of Charge II and Charge II, it must be satisfied by the evidence before the court, beyond a reasonable doubt:

(1) That at the time and place alleged the accused, without justification or excuse, wrongfully communicated to Private Ted K. Reece, a threat, to wit: 'I'd better not catch you outside';

(2) That under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces, or was of a nature to bring discredit upon the armed forces.

The term 'communicated to' means to make known to.

*The term 'threat' means a declaration of one's purpose or intention to do an act which is wrongful."* [Emphasis supplied.]

The defense counsel submitted several requests to instruct. Of these, one was to the effect that the court-martial must find that the threat was "an avowed present determination or intent to injure in the present or future by intentionally inflicting grievous bodily harm." A second was for an instruction that the court-martial could consider the lesser offense of using provoking speech in violation of Article 117 of the Code, 10 USC § 917, if it had a reasonable doubt as to the accused's guilt of the principal offense. Both were denied. However, as to the former, the law officer offered to give the instruction. with the exception of the clause "by intentionally inflicting grievous bodily harm." Defense counsel refused to accept the modification, and after further colloquy, withdrew his request.

On this appeal the accused contends that the italicized part of the law officer's instruction is erroneous because it defines the word "threat" as a decla-

ration of one's intention "to do an act which is wrongful" rather than as an intention "to injure presently or in the future." See United States v Davis, 2 USCMA 505, 10 CMR 3; United States v Sturmer, 1 USCMA 17, 1 CMR 17.[1] For its part, the Government contends that even if the law officer's definition is not as complete as it might have been, the defense counsel waived the deficiency by his actions.

In the view which we take of the case, we need not reach the claim of error in regard to the instructions ▮▮▮▮▮▮▮ on the principal offense. The law officer's refusal to instruct as requested, as to the lesser offense of provoking speech, was clearly error.

The words used by the accused could easily evoke from the guard an invitation to assume that the parties were already "outside" and that the accused should proceed with the avowed declaration. Clearly then the words had at least a tendency "to induce . . . [a breach] of the peace." Manual for Courts-Martial, United States, 1951, paragraph 196, page 351. The lesser offense, therefore, was in issue and should have been submitted to the court-martial for its consideration. United States v Wilson, 7 USCMA 713, 23 CMR 177.

The decision of the board of review as to Charge II and the sentence is reversed. The record of trial is returned to The Judge Advocate General of the Army for resubmission to a board of review. In its discretion, the board of review can affirm findings of guilty of the lesser offense of provoking speech and reassess the sentence, or order a rehearing on Charge II and the sentence.

Judge FERGUSON concurs.

LATIMER, Judge (dissenting):

I dissent.

A majority of the Court elects not to pass on the important questions in this case but because I believe the findings and sentence should be affirmed I am compelled to give consideration to all material questions in issue.

The accused was found guilty of desertion and communicating a threat, in violation of Articles 85 and 134, respectively, of the Uniform Code of Military Justice, 10 USC §§ 885 and 934. He was sentenced to a dishonorable discharge, forfeiture of all pay and allowances, and confinement at hard labor for two years. The convening authority reduced the period of confinement at hard labor to one year but approved all other portions of the sentence. The board of review in the office of The Judge Advocate General of the Army affirmed and accused petitioned for a grant of review. We authorized an appeal to consider the following assignments of error: (1) Whether the law officer incorrectly instructed the court-martial on the elements of communicating a threat; (2) whether the evidence is sufficient to sustain a finding of guilty of that offense; (3) whether the law officer erred in denying the accused's request for an instruction upon the lesser offense of using provoking language.

II

A short resume of the facts will assist the reader in understanding why I conclude the evidence ▮▮▮▮▮▮▮ sufficient to show an avowed determination by the accused to injure in the future. On the day of the incident, the accused was a prisoner working on a detail outside the stockade. He and another prisoner were equipped with sacks and sticks to assist in policing an assigned area. The accused passed certain debris and he was directed by the victim, who was his immediate guard, to return and perform his task properly. The order

---

[1] It is also arguable that the language of subdivision (1) of the instructions can be construed as a direction to the court-martial that the words used by the accused constitute a threat as a matter of law, rather than a direction to the court-martial that it must itself find a threat. See United States v Castel, NCM 56–02747, November 7, 1956, and cases cited; United States v Hyatt, 8 USCMA 67, 23 CMR 291; United States v Pennell, 144 F Supp 317 (ND Cal) (1956).

was disobeyed and the guard asked the accused if he understood the order. In response the accused uttered profanity and remained where he was. The order was repeated and the accused, with a show of reluctance, complied. The guard reported the incident to the detail sergeant and when he and the accused mounted the truck for return to the stockade, the accused stated, "I'd better not catch you outside." As I understand that phrase and under appropriate instructions, a court-martial could find beyond a reasonable doubt, in these circumstances, all the essential elements of the offense of communicating a threat. Therefore, the second granted issue should be determined adversely to the accused.

### III

As to the first assigned error, the law officer instructed as follows:

"The court is further advised that to find the accused guilty of the Specification of Charge II and Charge II, it must be satisfied by the evidence before the court, beyond a reasonable doubt:

(1) That at the time and place alleged the accused, without justification or excuse, wrongfully communicated to Private Ted K. Reece, a threat, to wit: 'I'd better not catch you outside';

(2) That under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces, or was of a nature to bring discredit upon the armed forces.

The term 'communicated to' means to make known to.

The term 'threat' means a declaration of one's purpose or intention to do an act which is wrongful."

The instructions as given follow the form set out in Department of the Army Pamphlet No. 27-9, "Military Justice Handbook, The Law Officer," instruction 171, page 102, a portion of which I quote:

"(1) That, at the time and place alleged, the accused, without justi-

534

fication or excuse, wrongfully communicated to —— a threat *to (injure —— by ——)* (accuse —— of having committed the offense of ——) (——), as alleged; . . .

". . . The term 'threat' means a declaration of one's purpose or intention to do an act which is wrongful." [Emphasis supplied.]

A comparison of the form with the instruction given in the instant case shows that the emphasized words in the form, "to-injure-by," were omitted by the law officer. That omission becomes important when construed with the latter portion of the instruction defining threat. In defining that word, the law officer stated that it meant a declaration of one's purpose or intention to do an act which is wrongful. While obviously the proposed act must be wrongful, it must also be of such a nature that if committed, injury to the threatended individual would result. The form definition of the word, while not as complete as it has been defined in our cases, might not be erroneous if in the earlier portions of the instruction, the court-martial was informed that it must find the threat was to injure the victim or that the words themselves were susceptible of only that construction.

From the briefs of the parties, it is evident that uncertainty exists in the Services as to this Court's beliefs on the scope of the military offense of communicating a threat. In United States v Sturmer, 1 USCMA 17, 1 CMR 17, we accepted the definition of the term threat as an avowed determination or intent to injure presently or in the future. In subsequent cases, we have not modified or changed that definition. Contrary to the assertion of the accused, this Court has not stated that the word injury must be limited to personal injury although all of our decided cases have involved that form of violence. The form specification in the Manual for Courts-Martial, United States, 1951, indicates that some other type of threatened injury may be the base for supporting a conviction of the offense, such as accusing a victim of a

crime. However, at the present time there is no reason for me to go beyond the limits of those cases we have decided.

Part of the confusion arises because counsel do not construe our language in the light of the issues confronting us in the particular cases. It was not doubt on my part about the nature of the injury threatened by this accused which caused me to join with my associates and hear arguments on the propriety of the instruction in the case at bar. Rather it was the fact that the instructions given to the court-martial by the law officer did not specifically require a finding that any injury was threatened. At best they only required the court-martial to find that the accused declared an intent to do something which was wrongful. The word wrongful is so broad that it may encompass many acts which have no reasonable relationship to injury to the victim's person, character, family, or property. It is true that in certain instances, we have found similar instructions nonprejudicial but that was because the words uttered disclosed with certainty that the act threatened involved injuries of a known type. That does not say, however, that error in the instructions was not present. In United States v Davis, 6 USCMA 34, 19 CMR 160, the author of this opinion gave consideration to this question. While the Chief Judge and the late Judge Brosman did not concur outright, they did not disagree with the views hereinafter expressed. They are quoted now to point up the fact that previously the instructions given in this case have been questioned.

"One further point has been raised. In his instruction to the court-martial quoted above, the law officer defined a threat as a 'declaration of one's purpose or intention to do an act *which is wrongful.*' (Emphasis supplied.) It is now asserted that the accused was prejudiced since that definition is too broad. While in the abstract there may be some basis for that view, when reduced to this particular instance, no prejudice resulted from the instruction as given.

Concededly, under some statutes only those statements are punished which threaten bodily harm or injury. See District of Columbia Code, Title 22, § 22-507 (threats to do bodily harm, bond to keep the peace required); 18 USC § 871 (threats to take life or inflict bodily injury upon the President of the United States). Other statutes, both State and Federal proscribe threats made to accomplish a specific illegal purpose, such as influencing the action of a public officeholder or a voter, or furthering a kidnapping scheme. Still others prohibit threats of injury to either persons or property in order to achieve certain purposes. Examples of this category among the Federal statutes are 18 USC § 372 (to prevent the accepting or holding of public office); 18 USC § 1503 (to impede a witness); and 18 USC § 1951 (to obstruct or harmfully affect commerce). Under the definition adopted by us in United States v Sturmer, supra, and reiterated in United States v Holiday, 4 USCMA 454, 456, 16 CMR 28, a threat to injure a person is within the prohibition of Article 134. It may be conceded for the purpose of the argument that, standing alone, the one paragraph of the instruction might be misleading. However, the evidence disclosed only a single threat against Melton, which involved a promise of injury to a person, and at the beginning of his instruction the law officer made it clear that the wrongful act to be considered was a threat to kill. As we have previously stated, instructions must be viewed as a whole, United States v Hatchett, 2 USCMA 482, 9 CMR 112; and when so considered, it is clear that these instructions left no possibility that the court-martial members were misled as to what they were required to find in order to convict on this charge."

In other cases involving similar instructions, we found no reason to reverse because the threatening words themselves imported personal violence. In United States v Sturmer, supra, the words used by the accused were:

**535**

" 'I'll use my fists on you later,' or words to that effect." In United States v Holiday, 4 USCMA 454, 16 CMR 28, the threat was: "I'll knock your . . . teeth down your throat." United States v Davis, supra, dealt with the words: "Melton, I'll kill you; . . . in civilian life or Army life." In all of these instances, the words uttered disclosed a fixed purpose to do an act which, if consummated, would involve personal injury to the proposed victim.

·Because of the nature of the utterance, this case could conceivably fall within or without the sweep of our prior holdings. However, that is a question which need not be decided, for any error in the instruction in this instance was consciously and knowingly waived. The record forces this conclusion for, at the appropriate time, counsel for the accused requested that the law officer give the following instruction:

"In order to find the accused guilty of the specification and the charge the court must find from all the evidence beyond a reasonable doubt that the threat communicated by the accused was an avowed present determination or intent to injure in the present or future by intentionally inflicting grievous bodily harm."

An out-of-court conference was held and during the discussion the law officer stated he would give the instruction up to and including the word "future," deleting the words "by intentionally inflicting grievous bodily harm." The part of the instruction the law officer proposed to give was the definition of the word threat as approved by us in United States v Sturmer, supra. Defense counsel objected to this modification of his proposed instruction, and when the law officer asked him if he desired the instruction as corrected to be given, he replied in the negative.

From the other proposed instructions submitted by defense counsel and from his statements in the out-of-court conference, it is clear that he understood the law and was satisfied that unless the issue of intentional infliction of grievous bodily harm was submitted, the instructions on the principal offense were satisfactory. Therefore, I pass on to consider whether this case involves a conscious and knowing waiver.

In United States v Massey, 5 USCMA 514, 18 CMR 138, the Court was confronted with a similar issue. There the defense counsel made an objection which he later withdrew. In speaking for a unanimous Court, Judge Brosman stated:

"In any event—and conceding arguendo that the law officer should have done more than he did—the express withdrawal by defense counsel of his previous objection leaves no issue for review on appeal. We have so held in cases in which the intent and purpose of the accused's lawyer was appreciably less recognizable than here. United States v Henry, 4 USCMA 158, 15 CMR 158; United States v Fisher, 4 USCMA 152, 15 CMR 152; United States v Vanderpool, 4 USCMA 561, 16 CMR 135. Cf. United States v Smith, 5 USCMA 314, 17 CMR 314. Indeed, it is arguable that in certain of those cases the actions of counsel were attributable to mere inadvertence, or even unawareness of the legal issue posed. Here, however, the situation is quite different. There can be no doubt that this attorney fully understood the nature of the flaw in the instruction as originally delivered. He was also in an excellent position to recognize the matter to which the court was addressing itself when its members sought a definition of 'uncorroborated testimony,' and to evaluate the interpretation they were likely to place on the law officer's instructional language. Yet he specifically withdrew his initial objection. Throughout the trial, defense counsel demonstrated both alertness and competence in high degree. Therefore we see no reason to reject his appraisal of the law officer's amendatory advice, and his view that it had corrected all danger of misapprehension which might have been created

by the former unfortunate phraseology."

In the instant case, defense counsel was in an excellent position to know the inadequacy of the instructions given by the law officer. He evaluated them and submitted an instruction of his own. When he failed to get all he requested, he withdrew his request. He demonstrated alertness and competency and I see no reason to reject his decision that the instruction as modified by the law officer was not wanted.

## IV

I now turn my attention to the third granted issue and here I part company with my brothers. At ▮ trial, counsel for the accused requested the law officer to instruct the court-martial on the lesser offense of using provoking speech or gestures which is defined as a crime by Article 117 of the Uniform Code of Military Justice, 10 USC § 917. The request was refused and I believe correctly so. The elements of the offense as set out in that Article are that the accused wrongfully used certain provoking or reproachful words or gestures toward another person subject to the Code. One matter not mentioned by the Court is the sufficiency of the pleading. Unless the included offense is fairly covered within the allegations of the specification, no finding can be returned thereon. There is no allegation that the victim was subject to the Code and unless the word private preceding the victim's name is sufficient for that purpose, the pleading is fatally deficient. Certainly many other Federal and state police agencies use the same designation and I therefore doubt that the offense is alleged.

Passing on to the more important question, I cannot find evidence to raise reasonably the utterance of provoking words as an alternative to the principal crime. Paragraph 196 of the Manual for Courts-Martial, United States, 1951, defines provoking and reproachful words as those words or gestures which are used in the presence of the person toward whom they are directed and which tend to produce breaches of the peace.

On many occasions, we have stated the rule with respect to the necessity of the law officer instructing on included offenses and, in keeping with the rule, I must look to the specification and to the proof to ascertain whether all elements of the included offense were alleged and fairly raised by the evidence introduced at trial as a reasonable alternative to the principal offense. The specification charges that the accused wrongfully communicated a threat by stating to the victim, "I'd better not catch you outside." I do not believe that to be an utterance which would tend to induce a breach of the peace. The facts prove no more than the allegation of the specification and therefore they are also insufficient to produce this effect. In the civilian community, a breach of the peace is a disturbance of the public tranquility and order. In the military it is an unlawful disturbance of the peace by an outward demonstration of a violent or turbulent nature. As stated in paragraph 195 of the Manual for Courts-Martial, United States, 1951, the acts contemplated are those which disturb the tranquility of the military community or impinge upon its good order. In reviewing the examples set forth in the Manual, the only one comparable to the utterance herein involved, is the use of vile and abusive words to another in a public place.

I find nothing in the facts of this case which remotely suggests the commission of that military offense. The utterance was in a truck in the presence of a guard and one other prisoner. From all that appears, it was not violent, turbulent, vile, or abusive. It was merely shown that the guard heard the remark and proof is absent that it had an impact on any third person or was even overheard. It was a statement which indicated that whatever injury was intended would not be inflicted until a future time. It was not calculated to excite passion or require immediate defensive measures by the guard, and it caused no disturbance— it could only reasonably be interpreted

**537**

as having created fear in the mind of the guard that he might suffer injury if a subsequent contingency occurred. At best it was a threat to injure in the future or it was no offense.

While the Court advances some theory that the remarks could be interpreted to "evoke from the guard an invitation to assume that the parties were already 'outside,'" that construction is not within the realm of reason. The guard was armed and it would be hazardous to the challenger and subject him to severe punishment to assault a guard in the execution of his duties. Moreover, the statement becomes nonsensible when interpreted in that manner for they were outside the stockade and there would be no occasion for the accused to predicate his contemplated assault on a condition which then existed. For my part, rather than strain to put a forced meaning into this oft-used phrase, I accept it as ordinary people would understand its content and as this guard apparently contrived its meaning. I dare suggest that the ordinary person's reaction to that threat would be to prevent the happening of the contingency or be prepared to defend himself, if and when it happened.

My attention has been directed to such cases as United States v Nicolas, 14 CMR 683, and United States v Brown, 13 CMR 161, in which boards of review have held certain utterances to be offenses within the meaning of Article 117. It may be that in those instances the language therein uttered or the circumstances under which the words were spoken were sufficiently provocative or reproachful to arouse emotions to a point where a breach of the peace was threatened, a question I need not decide. Suffice it to say that in this instance, the record does not show words, facts, or circumstances which tended to bring about that result. Accordingly, I would conclude that the law officer did not err when he refused to instruct on a lesser included offense.

I would affirm the board of review.