UNITED STATES, Appellee

v

FREDERICK M. FRAYER, Sergeant, U. S. Army, Appellant

11 USCMA 600, 29 CMR 416

No. 13,599

Decided July 8, 1960

*First Lieutenant Vernon C. Maulson* argued the cause for Appellant, Accused. With him on the brief was *Major Edward Fenig*.

*First Lieutenant Barry L. Kroll* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel James G. Mc-Conaughy.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

A general court-martial convicted the accused of several violations of the Uniform Code of Military Justice, and adjudged a sentence which included a dishonorable discharge and confinement at hard labor for four years. A board of review affirmed the conviction, but modified the sentence by reducing the period of confinement to two years. We granted review to consider two questions of law raised by the record of trial.

The first question is whether the court-martial could try the accused for some of the offenses charged, which were allegedly committed during a previous enlistment. While serving in Germany, the accused's term of enlistment expired on June 12, 1958. He was honorably discharged. The next day he re-enlisted to fill his own vacancy. In the interim between discharge and re-enlistment, the accused remained in the Government quarters and retained post exchange and other privileges of military personnel "since it was his intention to reenlist." On April 8, 1959, the accused was served with a charge sheet setting out two charges. The first contained a single specification alleging that on February 13, 1958, the accused made a false official statement, in violation of Article 107 of the Uniform Code of Military Justice, 10 USC § 907 (Charge I and its specification). Seven specifications were laid under Charge II. Five of these alleged the commission of an offense on a date previous to the accused's discharge and re-enlistment.[1] At trial, defense counsel moved to dismiss four of the specifications and to amend the fifth on the ground that prosecution was barred by reason of the intervening discharge.[2] The motion was denied. In our opinion, the ruling was erroneous.

During our last term we decided United States v Martin, 10 USCMA 636, 28 CMR 202. Al-though it differed on its specific application in that case, a majority of the Court agreed that Article 3(a) of the Uniform Code of Military Justice, 10 USC § 803, was intended by Congress to confer upon the military the power to prosecute an accused after re-enlistment for an offense committed before discharge, which the Supreme Court of the United States had found to be lacking in Hirshberg v Cooke, 336 US 210, 93 L ed 621, 69 S Ct 530. See also dissent of Chief Judge Quinn in United States v Solinsky, 2 USCMA 153, 7 CMR 29. The interval of time between discharge and re-enlistment is not controlling. Nor is it important that the accused occupied Government quarters and was accorded the same privileges as persons in the armed forces. Kinsella v Singleton, 361 US 234, 4 L ed 2d 268, 80 S Ct 297; McElroy v Guagliardo, 361 US 281, 4 L ed 2d 282, 80 S Ct 305. What is important is that the offense be one which Congress intended to be prosecutable, notwithstanding the intervening discharge. See United States v Gallagher, 7 USCMA 506, 22 CMR 296, opinions by Chief Judge Quinn and Judge Ferguson. The offenses Congress had in mind were those which could be considered "major" offenses. Hearings before House Armed Services Committee, 81st Congress, 1st Session, on H. R. 2498, page 881. Its views were formalized in the Article 3(a) requirement that the prior enlistment of-

---

[1] A motion for a finding of not guilty was granted as to one, and the court-martial acquitted the accused of another, of these specifications.

[2] The last mentioned specification alleged that on "several occasions" during the period "from about September 1957 to about November 1958," the accused committed adultery. Defense counsel contended the specification had to be amended to allege a date after the accused's re-enlistment.

fense be one "punishable by confinement for five years or more." Charge I and its specification and specifications 3, 4, and 5 of Charge II, all of which were committed in the previous enlistment, are not so punishable. See United States v Wysong, 9 USCMA 249, 26 CMR 29. As a result, no prosecution lies for those offenses.

As previously noted, specification 1 of Charge II alleges several acts of adultery during the period from September 1957 to November 1958. At trial, defense counsel moved to amend the specification by deleting reference to "September 1957" and inserting in lieu thereof July 1958, the month of the accused's re-enlistment. Implicit in the motion is an assumption that each act of adultery is a separate and distinct offense. That assumption raises the question of whether two or more offenses were joined in the same specification; at the same time, it effectively bars application of the no-prosecution rule since some of the acts occurred after re-enlistment. Whether the assumption is valid need not give us pause. In our opinion, where acts of adultery are continued from one period of enlistment into another, prosecution will lie for those acts performed during the latter enlistment without regard to the fact of an intervening discharge. The situation is generally analogous to that relating to the statute of limitations. It is the general rule as regards acts of a continuous nature that the statute of limitations bars proceedings on those as to which the statute has run, but there is no relation back to the date of the first act so as to bar proceedings on those acts committed within the period of limitations. United States v Fisher, 112 F Supp 233 (WD Ky) (1953); Longton v Stedman, 196 Mich 543, 162 NW 947. There may be exceptions to the general rule, but these depend upon special circumstances which are not alleged in the specification nor stated in the defense motion. Coyne v Coyne, 297 NY 927, 79 NE2d 748; Oro Fina Consolidated Mines v United States, 92 F Supp 1016 (Ct Cl) (1950), cert den 341 US 948, 95 L ed 1371, 71 S Ct 1015. We conclude, therefore, that the motion to amend the specification should have been granted. Since it was not, we are obliged to consider whether the evidence shows an act of adultery subsequent to June 12, 1958. In a parenthetical note, appellate defense counsel suggest that the evidence is insufficient. We have examined the record of trial and are satisfied that there is ample evidence to support the findings of guilty of an act of adultery during the accused's current enlistment.

It was established that the accused was married at all times important to the issue. In August 1958, accompanied by Erika, a woman not his wife, the accused appeared at the apartment of Kidder, one of his subordinates. Erika had previously been seen on a number of occasions going with the accused to a back room in the military police billets after midnight and remaining there with the accused for two or three hours. On the accused's order, Kidder and his wife left the accused and his companion alone in the apartment. When Kidder returned several hours later he had "to wait outside" the apartment door because the accused told him he could not be disturbed. Substantially similar incidents occurred at times subsequent to the August incident. Early in 1959, the accused told another witness that Erika was pregnant and that she was going to have his child. From these circumstances the court-martial could reasonably infer that the accused and Erika had sexual relations during the times they occupied Kidder's apartment. See Fleck v Fleck, 6 Misc 2d 202, 163 NYS2d 218; Moller v Moller, 115 NY 466, 22 NE 169. Consequently, to the extent that the specification alleges, and the evidence shows, acts of adultery during the accused's present enlistment, specification 1, Charge II, is legally sufficient and the findings of guilty are amply supported by the evidence.

The accused's second claim of error concerns the sufficiency of specification 7, Charge II, to allege the offense of

603

communicating a threat. In part, the specification reads as follows:

"... wrongfully communicate to Sergeant Cecil W. Caballero a threat to injure the Sergeant Caballero very badly by falsely accusing him of having committed unspecified offenses and by threatening to get persons to make false statements against him, in the event the said Sergeant Caballero should say anything unfavorable concerning the said Sergeant Frayer in an impending investigation, or words to those effects."

The specification is attacked on several grounds. First, it is contended that the offense of communicating a threat is limited to a threat of physical violence. We noted the problem in United States v Jenkins, 9 USCMA 381, 26 CMR 161.

In a number of cases in which we have considered the offense of communicating a threat, we ▆ defined a threat as "an avowed present determination or intent to injure presently *or in the future.*" United States v Sturmer, 1 USCMA 17, 1 CMR 17; United States v Holiday, 4 USCMA 454, 16 CMR 28. The crucial word in the definition is "injure." In a dictionary sense that word is very comprehensive. As defined in Webster's New International Dictionary, 2d ed, it includes harm or damage to the person; to goods and reputation; and pain to the sensibilities or the feelings. For present purposes, we need not consider whether a threat to injure a person's feelings is included within the scope of the military offense. Suffice it to say that a threat to damage wrongfully the reputation or character of a person in the armed forces has substantially the same tendency to stir up conflict and disrupt good order and discipline as a threat to injure physically. While it is true that United States v Metzdorf, 252 Fed 933 (D Mont) (1918), which we relied upon in our original examination of the elements and nature of the offense, speaks of a "threat to kill or to inflict bodily harm," the case does not stand in the way of

**604**

a conclusion that a threat includes injury to property as well as to the person. The *Metzdorf* prosecution was based upon a statute which specifically defined the offense in terms of a "threat to take the life of or to inflict bodily harm upon" the President of the United States. Of interest to us, was the broader definition of a threat to which the case referred. See United States v Sturmer, supra; United States v Holiday, supra. Frequently, the degree of harm is greater in a case of injury to personal reputation, which is a kind of property, than an injury to the person. We are reminded in the Old Testament that "a good name is rather to be chosen that great riches." Proverbs 22:1. Cervantes tells us in *Don Quixote* that "a good name is better than riches." Modern Library ed, Part II, Book III, page 668. In the present case, for example, the accused threatened to despoil the good reputation of a sergeant. False accusation could easily cost the victim his noncommissioned officer grade and debase him in the eyes of his subordinates. Even serious physical injury could have much less lasting effect than harm to the victim of the kind in question.

Approaching the specification from another point of view, appellate defense counsel contend ▆ that, in essence, it alleges the offense of extortion, in violation of Article 127 of the Uniform Code, 10 USC § 927. Although the punishment for the two offenses is the same, changing the designation of the charge accords the accused the opportunity to challenge the validity of the instructions on the ground they do not comprehend all of the elements of the extortion offense. The argument is a refinement of that urged upon us in United States v Holiday, supra. Our holding in that case provides sufficient reason to reject the argument here. We there said:

"For the foregoing reasons, Articles 89, 91, 117, 127, and 128, supra, were not designed by Congress to deal with the type of accusation before us here. Therefore, such cases as United States v Norris [2 USCMA

236, 8 CMR 36], and United States v Johnson [3 USCMA 174, 11 CMR 174], . . . are hardly applicable. Since communicating a threat is not otherwise provided for in the Uniform Code, it is properly alleged as a violation of Article 134, supra."

The findings of guilty of Charge I and its specification, and specifications 3, 4, and 5 of Charge II are set aside and those charges are dismissed. The sentence is set aside and the record of trial is returned to the Judge Advocate General of the Army for submission to the board of review for reassessment thereof on the basis of the remaining approved findings of guilty.

LATIMER, Judge (concurring in part and dissenting in part):

I concur in part and dissent in part.

While I join the Chief Judge in holding that the questioned specification alleges the offense of communicating a threat, which issue I shall discuss more fully hereinafter, I must disagree with the majority's conclusion that jurisdiction was wanting to try accused for such crimes as were committed during his prior enlistment.

In vew of the divergent approaches that have been taken by the respective Judges of this Court on jurisdictional issues, I see little value in discussing the question at any length. I do, however, suggest that the holding here seems difficult to square with the conclusion in United States v Martin, 10 USCMA 636, 28 CMR 202, particularly with the following statement by the author of the principal opinion:

"It is contended, however, that since the offense in issue is triable in a Federal district court as a violation of either 18 USC § 287 or § 1001, Article 3(a) prohibits the exercise of court-martial jurisdiction. The argument disregards the fundamental purpose of the Article. The Article was intended to enlarge jurisdiction, not to restrict it." [10 USCMA at page 639.]

To the extent that the rationale utilized in the case at bar may represent a retreat from that position—with which I expressed my disagreement in *Martin*—my associates appear more nearly to employ the concepts I would follow in applying Article 3(a), Uniform Code of Military Justice, 10 USC § 803. The interested reader will find my own views on jurisdiction under that Article set forth in United States v Gallagher, 7 USCMA 506, 22 CMR 296, and in my separate opinions in United States v Martin, supra, and United States v Wheeler, 10 USCMA 646, 28 CMR 212. However, I believe it unnecessary to reach that question in this instance, for I conclude jurisdiction may be grounded on another basis. A brief recitation of the facts will be helpful in understanding my position.

On June 12, 1958, while he was serving in Germany, the accused's term of enlistment expired and he was honorably discharged. It was his intention and he in fact did re-enlist the next day to fill his own vacancy, "just as if it was a continuance." During this period, he and his family continued to remain members of the military community, occupied Government quarters, retained exchange and other kindred privileges afforded to servicemen by the armed forces, and there was no application to remain in Germany as a civilian nor any move to merge with the local community. Accused was brought to trial in April of 1959, and there, on the basis of the above facts, individual civilian defense counsel moved to dismiss certain of the offenses charged, contending that jurisdiction was wanting to try accused for such crimes as were committed during his prior enlistment.

Obviously it is necessary that the accused be subject to military law both at the time the offense is committed and at the time of trial, and in my view it is also essential that he be subject to military law at all times between the two events. Here the accused was in Germany when the offenses were perpetrated, when he was tried and during the intervening period, and consequently there was no hiatus in military jurisdiction. My views on that factual situation are set forth in the following

quotation from United States v Solinsky, 2 USCMA 153, 7 CMR 29, and the recent decisions of the Supreme Court have not announced contrary ideas:

"There is another fundamental difference between the two cases. In this instance the accused was discharged and re-enlisted while he was on duty in Germany. Hirshberg's status changed while he was in the United States. In all of the Manual provisions, it is expressly provided that if a change in status does not remove the person from a category of persons subject to military law, then jurisdiction is not cut off. Subsection (d) of Article of War 2, supra, provides as follows:

'All retainers to the camp and all persons accompanying or serving with the Armies of the United States without the territorial jurisdiction of the United States, and in time of war all such retainers and persons accompanying or serving with the Armies of the United States in the field, both within and without the territorial jurisdiction of the United States, though not otherwise subject to these articles.'

"If we were to make what appears to us to be an unreasonable assumption, that is, that accused's status changed, we would be faced with this factual situation. For an infinitesimal period of time the accused became a civilian without the territorial jurisdiction of the United States. During this period he was housed, maintained, paid, and otherwise serviced by the United States Army. He was transported overseas and he was returned to the United States by the Army. Between these two events he was always a soldier. Under these circumstances he would either be accompanying or serving with the Armies of the United States from the moment he left these shores until he returned. If, for a moment, he stepped from his uniform into civilian clothes and then back again, he never stepped into a category which was not subject to military

law. Under the principles announced in all the authorities, and under the Articles of War, he was always subject to courts-martial jurisdiction. A momentary break in service does not necessarily break court-martial jurisdiction. It did in the Hirshberg case but as we view the particular circumstances of this case, we find it did not do so here."

Accordingly, I am of the opinion that the law officer ruled correctly when he denied the defense motion, and I must disagree with my associates insofar as they hold jurisdiction wanting in the case at bar.

The remaining issue concerns the sufficiency of one specification to allege the offense of communicating a threat. I agree that that crime is stated, but believe it may be helpful to discuss the problem somewhat more fully. The issue raises the interesting question of whether that crime must be based on an avowed purpose to inflict physical injury. The specification in question alleges and the facts establish that the accused threatened falsely to accuse a named victim of unspecified crimes and to obtain false statements against him unless he refrained from testifying unfavorably about the accused in an impending investigation.

It is argued by the accused that threats within the purview of Article 134, Uniform Code of Military Justice, 10 USC § 934, should be limited to offers to do physical violence and that inferentially our prior cases announce that limitation. The last portion of the argument may be disposed of with dispatch because we have not expressed any opinion on other types of injuries for the reason that such an issue has never been before us. United States v Jenkins, 9 USCMA 381, 26 CMR 161; United States v Kelly, 9 USCMA 26, 25 CMR 288; United States v Hazard, 8 USCMA 530, 25 CMR 34; United States v Humphrys, 7 USCMA 306, 22 CMR 96; United States v Davis, 6 USCMA 34, 19 CMR 160; United States v Rutherford, 4 USCMA 461, 16 CMR 35; United States v Holiday, 4 USCMA 454, 16 CMR 28; and United States v Sturmer, 1 USCMA 17, 1 CMR 17,

are cases which involved physical injury, and there is no language which fairly infers that threats to reputation or property are excluded from our definition of the word "threat."

In those cases, we defined "threat" as follows: "A threat is an avowed present determination or intent to injure presently or in the future." The critical word, insofar as the present issue is concerned, is "injure." In Webster's New International Dictionary, 2d ed, the following definition may be found:

> "To do harm to; to hurt; damage; impair; to hurt or wound, as the person; to impair the soundness of, as health; to damage or lessen the value of, as goods or estate; to slander, tarnish, or impair, as reputation or character; to give pain to, as the sensibilities or the feelings."

Surely within that delimitation is damage to reputation or character, and for the reasons set forth in the principal opinion it is manifest that the crime can be committed by threats to injure or destroy the important rights to have and enjoy a good name and an untarnished character, for Article 134 of the Code, supra, proscribes those offenses which are not specifically defined in the punitive Articles but which have a direct impact upon the good order and discipline of the services.

That leaves for consideration the contention that the specification alleges extortion under Article 127 of the Code, 10 USC § 927, and therefore the offense must be punished thereunder or not at all. A similar argument is made repeatedly on appeal as it offers an escape route for an accused. Although, from a punishment standpoint, it makes no difference to him since the maximum permissible punishment is the same for both offenses, he can, by seeking to shift the charge, assert that the court-martial was not given an opportunity to consider the elements of the offense of extortion. There can be no doubt, however, that we must reject the argument that Congress pre-empted the field of threats not involving injury to the person when it enacted Article 127. As the Chief Judge points out, that contention is but a refinement of the one urged upon us in United States v Holiday, supra, but specifically rejected. Our rationale there disposes of this argument but, because like assertions are so often brought before us, I deem it appropriate to develop the issue at greater length in an endeavor to resolve mistaken notions in this area.

There seems to be some misapprehension about the power of Congress to make one act a crime under two or more punitive Articles. There is no such proscription, for the bar that has been erected is that an accused shall not be twice tried or punished for the same offense. But that is not to say that the Government cannot elect to prosecute once under any statute which has been violated. By way of illustration, when a member of the military misses a movement, he can be charged with violating either Article 86 or Article 87. If he runs away in the presence of the enemy, he may be tried for desertion under Article 85 or misbehavior before the enemy pursuant to Article 99. Examples could be multiplied, but from the foregoing it ought to be evident that, unless there are clear indications that Congress, by enacting one statute, intended not to permit prosecution under any other law, then the Government may choose which punitive Article will be used to support the specification and charge.

In the case at bar, we are faced with a situation where we must consider the issue when we have one specific punitive Article which defines extortion and a general Article which leaves the final definition of the offense to this Court. However, the right to bring an action under either Article is not diminished by that fact. For example, I am certain no one would contend that because Congress proscribed drunken driving under Article 111, ordinary drunkenness does not constitute a delict in contravention of Article 134. By the same token, in the event an accused threatens physical injury to an officer in the execution of his duties, there can be no doubt that he may properly

**607**

be charged with either a violation of Article 90 or communicating a threat under the general Article. But more important, and with regard to the specific problem before us in this instance, there is no clear-cut indication that Congress intended to narrow the crime of communicating a threat to physical damage to the person merely because it passed an Article making extortion an offense. To the contrary, it is crystal clear that the latter crime was intended to protect an entirely different norm. An essential ingredient of extortion is that it must be communicated with the intent to obtain anything of value, or any acquittance, advantage or immunity. The element is unimportant in the crime of communicating a threat, for it can be committed if the accused is actuated solely by hatred, anger or vengeance. Extortion can be perpetrated by threats of physical violence or injury to character or reputation, and so if Congress pre-empted the field of threats when it enacted Article 127, it left a field of crimes unpunishable—a field which is of critical importance to the maintenance of discipline and good order in the armed forces.

United States v Norris, 2 USCMA 236, 8 CMR 36, and United States v Johnson, 3 USCMA 174, 11 CMR 174, are again cited—as they were in *Holiday,* supra—as authority for the proposition that bringing this action under Article 134 was improper. Perhaps if we were confronted with the same conditions with respect to the crime of communicating a threat as existed where we found Congress had blanketed the field with specific punitive Articles, the principle announced in *Norris* might be apposite. Singularly missing, however, in the case at bar is any indication that Congress intended a preemption. Moreover, the following language from United States v Norris, supra, bears mentioning:

"Whatever may have been the state of the law prior to the Uniform Code, we are convinced that the general Article of the Code—Article 134, supra—embraces no criminal conversion offense lesser than wrong-

ful appropriation as defined by Article 121, supra. That Article includes larceny and wrongful appropriation—the distinction between the two lying in the required element, for the former, of an intent to deprive permanently and, for the latter, of an intent to deprive only temporarily. 'Wrongful taking' is not mentioned as an offense anywhere in the Code or Manual. No sample specification governing such an offense is listed; it is not mentioned in the Table of Maximum Punishments; and it is not listed in the 'Table of Commonly Included Offenses' as lesser included under larceny."

That situation may appropriately be compared with the treatment given to communicating a threat. While it is not specifically defined in the Code, it is not out of the ordinary for civilian jurisdictions to proscribe that act as an offense, and military law has recognized the crime. There is a sample specification setting forth the allegations necessary to state the offense, and it is listed in the Table of Maximum Punishments. Manual for Courts-Martial, United States, 1951, appendix 6c, at page 494, and paragraph 127c, at page 227. While these are merely straws in the wind, they are factors which bear upon the question of preemption and suggest a new and unintended offense is not being created by our construction.

For all the above stated reasons, I agree with the Chief Judge that we must reject the argument that the questioned specification fails to state the offense of communicating a threat.

Accordingly, I would affirm the decision of the board of review.

FERGUSON, Judge (concurring in part and dissenting in part):

I concur in part and dissent in part.

At the outset, I note my agreement with the Chief Judge's conclusion that there was no jurisdiction to try accused for any of the offenses alleged against him except that portion of the adultery specification which stated that the crime

608

occurred during his current enlistment and the charge of communication of a threat to Sergeant Caballero. In order that there may be no misunderstanding of my position, I point out that my conclusion concerning lack of jurisdiction is based upon the decision of the United States Supreme Court in Hirshberg v Cooke, 336 US 210, 93 L ed 621, 69 S Ct 530 (1949), and the adoption by Congress of the rule there enunciated, except as to serious offenses, in Uniform Code of Military Justice, Article 3, 10 USC § 803. I need not further discuss the matter, for my views were fully set forth in my separate opinion in United States v Martin, 10 USCMA 636, 28 CMR 202.

I am, however, unable to join with by brothers in their belief that specification 7 of Charge II properly alleges the offense of communicating a threat. The pertinent language of the specification is as follows:

"In that Sergeant (E-5) Frederick M. Frayer, U. S. Army, Company A, 503th Military Police Battalion did, at Bad Tolz, Germany, on or about 4 February 1959, wrongfully communicate to Sergeant Cecil W. Caballero a threat to injure the said Sergeant Caballero very badly by falsely accusing him of having committed unspecified offenses and by threatening to get persons to make false statements against him, in the event the said Sergeant Caballero should say anything unfavorable concerning the said Sergeant Frayer in an impending investigation, or words to those effects."

It may be that the foregoing allegations set forth an offense similar to obstructing justice or tampering with a witness. See United States v Long, 2 USCMA 60, 6 CMR 60. The specification was submitted, however, to the court-martial upon the basis that it alleged communication of a threat to injure Sergeant Caballero's reputation. The same theory is argued here, and reversal is required for instructional insufficiency unless it can be said that a threat to injure the reputation of another is, as a matter of law, an offense

under Code, supra, Article 134, 10 USC § 934. I believe that it is not.

I have no argument with the conclusion that character assassination tends directly to affect good order and discipline in the armed forces. That is particularly true when the threatened damage has for its purpose interference in the conduct of an official military investigation. Nevertheless, I believe that my brothers fail to give sufficient weight to another provision of the Article in question.

Code, supra, Article 134, provides pertinently:

"*Though not specifically mentioned in this chapter*, all disorders and neglects to the prejudice of good order and discipline in the armed forces, . . . shall be taken cognizance of by a general, special, or summary court-martial, according to the nature and degree of the offense, and shall be punished at the discretion of that court." [Emphasis supplied.]

In United States v Norris, 2 USCMA 236, 8 CMR 36, we pointed out, at page 239:

"It is our view that, in accordance with the remarks of Professor Morgan, quoted earlier, Article 134 should generally be limited to military offenses *and those crimes not specifically delineated by the punitive Articles*. See Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint, page 720." [Emphasis supplied.]

Consonant with that declaration, we later held that it was error for the board of review to approve findings of guilty of a disorder under Code, supra, Article 134, where the accused had been tried and found guilty of missing movement, in violation of Code, supra, Article 87, 10 USC § 887. United States v Johnson, 3 USCMA 174, 11 CMR 174. Subsequently, we reached the same conclusion with respect to an attempt to charge an accused with absence without leave with intent to avoid basic training, in violation of Code, supra, Article 134, rather than Code, supra, Article 85, 10 USC § 885. United States v Deller, 3 USCMA 409, 12 CMR 165.

The essence of these decisions is that conduct violative of a specific Article of the Code may not, by superficial changes in allegations, be made also a violation of Code, supra, Article 134. The specific Article is pre-emptive.

In this case, I am convinced that the specification in question charges the offense of extortion, in violation of Code, supra, Article 127, 10 USC § 927. Indeed, the Manual for Courts-Martial, United States, 1951, in discussing the latter offense, states, at page 369:

"The threat sufficient to constitute extortion may be a threat to do any unlawful injury to the person or property of the individual threatened or of any member of his family or of any other person held dear to him; *or a threat to accuse the individual threatened* . . . of any crime; . . ." [Emphasis supplied.]

In like manner, Article 127 defines extortion as the communication of "threats to another person with the intention thereby to obtain anything of value or any acquittance, advantage, or immunity." A reading of the specification makes it clear that Sergeant Frayer is alleged to have *threatened* Sergeant Caballero with the preference of false charges *in order to prevent delivery of unfavorable testimony* at an impending investigation. Had his threat been successful, it is clear beyond cavil that Frayer may have obtained "acquittance, advantage, or immunity." It is, therefore, difficult for me to reach any conclusion other than that the count sets forth a violation of Code, supra, Article 127, and that this specific statute is pre-emptive of Code, supra, Article 134. United States v Johnson, supra; United States v Deller, supra. In view of the theory utilized by the Government at the trial level and the resultant instructional deficiencies, I believe that reversal of this finding is required. United States v Dozier, 9 USCMA 443, 26 CMR 223; United States v Smart, 9 USCMA 451, 26 CMR 231.

The author of the principal opinion ignores the principle that a specific Article of the Code pre-empts the general Article by citing the Court's contrary conclusion with respect to threats of physical violence in United States v Holiday, 4 USCMA 454, 16 CMR 28. The difficulty with this position is that it overlooks the substantial distinction between a simple threat of physical violence and threats made for the alleged and proven purpose of obtaining an advantage. United States v Holiday, supra, is thus clearly distinguishable, and I remind my brothers of Professor Morgan's statement before the Congress that "we have made specific several offenses *which were previously punishable* under the general article." (Emphasis supplied.) Hearings before Senate Armed Services Committee on S. 857 and H. R. 4080, 81st Congress, 1st Session, page 37. As extortion was formerly punished as a violation of the general Article, it certainly must fall within the class concerning which he spoke. Thus, I am sure that Congress intended a pre-emption where, as here, it is alleged that the threat was made for the purpose of obtaining an advantage to the accused. Under these circumstances, it behooves us to give the legislative purpose controlling effect. Accordingly, I cannot join with the majority in their belief that the *Norris* doctrine is inapplicable.

As I conclude that Code, supra, Article 127, is pre-emptive of Code, supra, Article 134, in the field of extortion, I would also order a rehearing with respect to specification 7 of Charge II.