**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James HELLER, Defendant-Appellant.**

**No. 77–5193.**

United States Court of Appeals, Sixth Circuit.

Argued Nov. 30, 1977.

Decided June 30, 1978.

Rehearing and Rehearing En Banc Denied Sept. 12, 1978.

---

John Weglian, Toledo, Ohio (Court-appointed), for defendant-appellant.

Frederick M. Coleman, U. S. Atty., Patrick J. Foley, Asst. U. S. Atty., Toledo, Ohio, for plaintiff-appellee.

Before PHILLIPS, Chief Judge, and PECK and KEITH, Circuit Judges.

PECK, Circuit Judge.

Defendant-appellant was indicted on five counts of having willfully and knowingly transmitted in interstate commerce a communication that contained a demand and request for a ransom and reward for the release of a kidnapped person, conduct alleged to be in violation of 18 U.S.C. § 875(a). Appellant first entered a plea of not guilty to the charges and filed a motion to dismiss the indictment. The district court denied the motion to dismiss, and appellant changed his plea to *nolo contendere.* The district court accepted the plea and entered judgment against appellant on all five counts of the indictment. Appellant was sentenced under the conviction on Count 1 to a term of imprisonment for days already served in pre-trial detention (approximately six months) and to a two year period of probation. The jurisdiction of the probation was transferred to the State of New York. Imposition of sentences under Counts 2 through 5 was suspended. Appellant then perfected an appeal to this Court.[1] We reverse.

I

On five separate occasions in October, 1976, appellant called over the telephone

---

1. Appellant's appeal could only raise jurisdictional questions, however, because his plea waived non-jurisdictional defects to the conviction. *United States v. Norris,* 281 U.S. 619, 50 S.Ct. 424, 74 L.Ed. 1076 (1930); *United States v. Sepe,* 474 F.2d 784 (5th Cir. 1973); *United States v. Cox,* 464 F.2d 937 (6th Cir. 1972). Appellant's attack on the constitutionality of 18

from New York City, New York, to Toledo, Ohio, and spoke with a Mr. Robert Towne. During the conversations that appellant had with Mr. Towne, appellant requested $50,000 as an advance payment for his obtaining the release of a Mr. William Niehous, who, before being kidnapped in South America in February, 1975, had worked for the same company as Mr. Towne, Owens-Illinois, Inc. Appellant said that he knew where in Venezuela the kidnapping gang was holding Mr. Niehous, that he had been in contact with a few of the members of the kidnapping gang, and that he could free Mr. Niehous. During the last telephone conversation that appellant had with Mr. Towne, the FBI was able to trace the telephone call and to apprehend appellant in the phone booth that he was using for the call to Mr. Towne.[2] According to representations made in the district court by counsel for appellee United States, appellant, after being apprehended, admitted to the FBI that he actually knew nothing of the whereabouts of Mr. Niehous and that he had had no contact with any kidnapping gang in Venezuela.[3]

Appellant was indicted under 18 U.S.C. § 875(a). That statute provides:

Whoever transmits in interstate commerce any communication containing any demand or request for a ransom or reward for the release of any kidnapped person, shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

Appellant initially sought to have the indictment dismissed. Appellant first argued

that 18 U.S.C. § 875(a) was unconstitutional because it was overbroad and vague and because it stated a *malum prohibitum* offense. Appellant also attacked the sufficiency of the indictment, arguing that it was fatally defective because it failed to give appellant proper notice of the offense with which he was charged and because it did not allege the proper *mens rea* element of the offense, the intent to extort, which the statute required if it did not state a *malum prohibitum* offense.

The district court rejected these contentions and denied appellant's motion to dismiss, holding that the statute, 18 U.S.C. § 875(a), sufficiently defined in precise and clear language the proscribed conduct, that appellant's *mens rea* arguments were without merit, and that the indictment properly apprised appellant of the offense that he was alleged to have committed. Appellant's offer and the district court's acceptance of the *nolo contendere* plea followed.

On appeal, appellant seeks to have this Court reverse the judgment against him and direct the district court to dismiss the indictment, raising the same objections to the prosecution that he did before the district court. Since we reverse on other grounds, we assume without deciding that the statute is not unconstitutionally vague or overbroad. We turn therefore to a consideration of (1) the criminal intent requirement under 18 U.S.C. § 875(a), and (2) the sufficiency of the indictment.

## II

■ Appellant's constitutional challenges to 18 U.S.C. § 875(a) were based on the

---

U.S.C. § 875(a) and on the sufficiency of the indictment was within the range of questions that he could raise.

The better procedure to follow if there be an appeal based on a judgment entered on a *nolo contendere* plea, though, would be for the defendant to make a motion to arrest judgment pursuant to Rule 34 of the Federal Rules of Criminal Procedure, and then appeal to the Court of Appeals if the district court denied the Rule 34 motion. The purpose of such a procedure would be to allow the district court to pass on the defendant's contentions. Of course, in the present case, the function was served by the motion to dismiss the indictment.

**2.** These telephone conversations were taped, and the district court listened to these tapes at the hearing on the motion to dismiss the indictment. A transcript of the tapes, which compose a part of the larger transcript of the hearing on the motion to dismiss the indictment, is included in the record before this Court.

**3.** At the hearing on the change of appellant's plea to *nolo contendere,* the United States was asked by the district court to summarize its evidence against the appellant. Counsel for the United States made a statement to this effect.

premise that the statute defined a *malum prohibitum* offense as distinguished from a *malum in se* crime. According to appellant, because of the absence of a provision requiring the presence of intent as an element of the offense, the statute was vague and overbroad in application. Appellant also contended that the due process limitations on *malum prohibita* offenses were violated because 18 U.S.C. § 875(a) renders severe punishment.

The district court rejected appellant's arguments because it agreed with the appellee United States that the offense stated in 18 U.S.C. § 875(a) included a criminal intent element. We believe that the district court correctly rejected appellant's argument on this issue. 18 U.S.C. § 875(a) does not define a *malum prohibitum* offense. The statute does cover highly dangerous conduct and carries a severe penalty. A defendant convicted of violating 18 U.S.C. § 875(a) can be sentenced to twenty years imprisonment and fined $5,000. The concept of *malum prohibitum* crime simply does not square with that kind of an offense and with such severe punishment, which is reserved for the perpetuation of *malum in se* crimes.

In *Morissette v. United States,* 342 U.S. 246, 255–56, 72 S.Ct. 240, 96 L.Ed. 288 (1952), the Supreme Court discussed the considerations behind the enactment of *malum prohibita* offenses.

These cases do not fit neatly into any of such accepted classifications of common-law offenses, such as those against the state, the person, property, or public morals. Many of these offenses are not in the nature of positive aggressions or invasion, with which the common law so often dealt, but are in the nature of neglect where the law requires care, or inaction where it imposes a duty. Many violations of such regulations result in no direct or immediate injury to person or property but merely create the danger or probability of it which the law seeks to

minimize. While such offenses do not threaten the security of the state in the manner of treason, they may be regarded as offenses against its authority, for their occurrence impairs the efficiency of controls deemed essential to the social order as presently constituted. In this respect, whatever the intent of the violator, the injury is the same, and the consequences are injurious or not according to fortuity. Hence, legislation applicable to such offenses, as a matter of policy, does not specify intent as a necessary element. The accused, if he does not will the violation, usually is in a position to prevent it with no more care than society might reasonably expect and no more exertion that it might reasonably exact from one who assumed his responsibilities. Also, penalties commonly are relatively small, and conviction does no grave damage to an offender's reputation. Under such considerations, courts have turned to construing statutes and regulations which make no mention of intent as dispensing with it and holding that the guilty act alone makes out the crime. This has not, however, been without expressions of misgiving.

█ Certainly, if Congress attempted to define a *malum prohibitum* offense that placed an onerous stigma on an offender's reputation and that carried a severe penalty, the Constitution would be offended, but Congress has been aware of the limitations on *malum prohibita* offenses. In 1948, Congress revised and codified the Criminal Code. In that effort, a thorough examination was made of the punishment levied by the offenses stated in the Criminal Code, and in many cases the punishments were revised to fit the crimes. H.Rep.No. 304, 80th Cong., 1st Sess. (1947). In the House Report on the bill,[4] Congress defined *malum prohibita* offenses.

Offenses mala prohibita: For situations of regulatory statutes, constituting mala prohibita, a maximum imprison-

---

4. House Report No. 304 was the primary legislative history on the 1948 codification of the Criminal Code. *See* Sen.Rep.No. 1620, 80th

Cong., 2d Sess., pp. 1–2 (1948). The Senate amendments to the bill did not change any of the punishments stated in the House version.

ment penalty of 1 year seemed adequate. This prevents the stigma and consequence of a felony conviction from attaching to the defendant and, on the other hand, would facilitate and expedite prosecutions by making it possible to prosecute by information. Moreover, juries frequently are reluctant to convict any defendant if they know the potential maximum penalty is excessive, although it is seldom imposed in actual practice.

H.Rep.No. 304, 80th Cong., 1st Sess., p. A4 (1947).

In 1948, no changes were made in the punishment stated in what is now 18 U.S.C. § 875(a), and it strains credulity to think that Congress would overlook the penalties in 18 U.S.C. § 875(a) if in fact it intended the statute to state a *malum prohibitum* offense. If we would have to imply an intent element to this offense, we would, because Congress is attempting to define a serious crime. *Morissette v. United States, supra,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288. *See also United States v. Freed,* 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971); *United States v. Renner,* 496 F.2d 922 (6th Cir. 1974); *United States v. Johnson,* 419 F.2d 56 (4th Cir. 1969); *Holdridge v. United States,* 282 F.2d 302 (8th Cir. 1960); *Delaney v. United States,* 199 F.2d 107 (1st Cir. 1952).

We need not rely on any process of implication, though, because of the legislative history of 18 U.S.C. § 875(a). *See Morissette v. United States, supra,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288; *United States v. Dotterweich,* 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943); *United States v. Balint,* 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922); *United States v. Behrman,* 258 U.S. 280, 42 S.Ct. 303, 66 L.Ed. 619 (1922). Our review of the legislative history of 18 U.S.C. § 875(a) will demonstrate that Congress intended not only that there be a criminal intent element of the crime charged in the statute but also that this intent element be specifically the intent to extort.

The first statutory predecessor to the current 18 U.S.C. § 875(a) was enacted in 1934.

(May 18, 1934, ch. 300, 48 Stat. 781, 18 U.S.C. § 408d.) That statute read as follows:

That whoever, with intent to extort from any person, firm, association, or corporation any money or other thing of value, shall transmit in interstate commerce, by any means whatsoever, any threat (1) to injure the person, property, or reputation of any person, or the reputation of a deceased person, or (2) to kidnap any person, or (3) to accuse any person of a crime, or (4) containing any demand or request for a ransom or reward for the release of any kidnapped person, shall upon conviction be fined not more than. $5,000 or imprisoned not more than twenty years, or both: *Provided,* That the term "interstate commerce" shall include communication from one State, Territory, or the District of Columbia, to another State, Territory, or the District of Columbia: *Provided further,* That nothing herein shall amend or repeal section 338a, title 18, United States Code (47 Stat. 649).

This 1934 statute was directed at extortionate threats.

In 1939, the 1934 statute was amended.

(a) Whoever shall transmit in interstate commerce, by any means whatsoever, any communication containing any demand or request for a ransom or reward for the release of any kidnaped person; or whoever, with intent to extort from any person, firm, association, or corporation, any money or other thing of value, shall transmit, as aforesaid, any communication containing any threat to kidnap any person or any threat to injure the person of another shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

(b) Whoever shall transmit in interstate commerce by any means whatsoever any communication containing any threat to kidnap any person or any threat to injure the person of another shall be fined not more than $1,000 or imprisoned not more than five years or both.

(c) Whoever, with intent to extort from any person, firm, association, or cor-

poration, any money or other thing of value, shall transmit in interstate commerce by any means whatsoever any communication containing any threat to injure the property or reputation of the addressee or of another or the reputation of a deceased person or any threat to accuse the addressee or any other person of a crime shall be fined not more than $500 or imprisoned not more than two years, or both.

(d) Any person violating the provisions of this section may be prosecuted in the judicial district from or into which such threat is transmitted, as aforesaid: *Provided,* That any defendant in an indictment hereunder, relating to communications originating in the United States, shall upon motion duly made, be entitled as a matter of right to be tried in the district court of the United States in which the matter mailed or otherwise transmitted was set first in motion; that is, in the mails or in commerce between the States. The term "interstate commerce," as used in this section shall include communication from one State, Territory, or the District of Columbia, to another State, Territory, or the District of Columbia.

(May 15, 1939, ch. 133 § 2, 53 Stat. 743, 18 U.S.C. § 408d.) The statute was thus changed to cover non-extortionate threats as well as extortionate threats.

In 1948 this statute was revised and codified as 18 U.S.C. § 875.

(a) Whoever transmits in interstate commerce any communication containing any demand or request for a ransom or reward for the release of any kidnapped person, shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

(b) Whoever, with intent to extort from any person, firm, association, or corporation, any money or other thing of value, transmits in interstate commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

(c) Whoever transmits in interstate commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

(d) Whoever, with intent to extort from any person, firm, association, or corporation, any money or other thing of value, transmits in interstate commerce any communication containing any threat to injure the property or reputation of the addressee or of another or the reputation of a deceased person or any threat to accuse the addressee or any other person of a crime, shall be fined not more than $500 or imprisoned not more than two years, or both.

As can be seen, no substantive changes were made to the statute in 1948, and the legislative history to the 1948 codification of the Criminal Code supports this conclusion. In fact, the only comment made on the 1948 codification of the statute in the House Report indicates that no substantive changes were made. In H.Rep.No. 304, 80th Cong., 1st Sess., p. A73 (1947), the Reviser's Note on the new 18 U.S.C. § 875 appears.

### Section 875—Section Revised

Based on title 18, U.S.C., 1940 ed. § 408d (May 18, 1934, ch. 300, 48 Stat. 781; May 15, 1939, ch. 133, § 2, 53 Stat. 743).

Provisions as to district of trial were omitted as covered by sections 3237 and 3239 of this title.

Definition of "interstate commerce" was omitted in conformity with definition section 10 of this title.

Changes were made in phraseology and arrangement.

It was thus in 1939 that the "intent to extort" language was stricken from that portion of the statute that concerns us here. The Senate Report accompanying the 1939 bill provided the primary legislative history of the 1939 Amendments, Sen.R.No. 348, 76th Cong., 1st Sess. p. 4 (1939), and it stated the following:

As the statutes are now worded it is no offense to send a threat through the mails or in interstate commerce unless the sender of such threat intends to extort money, or other thing of value. The Department reports that since the enactment of the extortion statutes of 1932 and 1934, supra, there has come to its attention a number of threats of a very serious and socially harmful character not covered by the existing law for the reason that the sender of the threat did not intend to extort money or other thing of value for himself. A typical threat of this character, for example, was reported to be one directed to the Governor of a Southern State threatening that if certain defendants in a criminal case were not released the home of the Governor would be blown up.

Under the present statutes it is reported the act must be accompanied by an intention on the part of the sender to secure for himself something of value, that is, there must be both a "giving up" of something of value on the part of the sendee and an "appropriation" thereof on the part of the sender. The proposed bill provides for a maximum penalty of 20 years' imprisonment and a fine of not more than $5,000, or both, in cases where the communication contains a demand or request for ransom or reward for the release of any kidnaped person and in cases of threat to kidnap or to injure the person where these are accompanied by an intent to extort.

Where such threats are not accompanied with an intent to extort it provides a maximum penalty of 5 years' imprisonment and a fine of not more than $1,000, or both. Where the threat is to kidnap or injure a person but is not accompanied with an intent to extort the proposed bill provides a maximum penalty of 2 years' imprisonment and a fine of not more than $500, or both. It provides, also, a maximum penalty of 2 years' imprisonment and a fine of not more than $500, or both,

for threats to injure the property or reputation of the addressee of or another, or the reputation of a deceased person, or any threat to accuse the addressee or any other person of a crime, where the threat is accompanied with an intent to extort.

See H.R.No. 102, 76th Cong., 1st Sess., pp. 1–2 (1939).[5]

In its memorandum opinion denying appellant's motion to dismiss the indictment, the district court concluded that the legislative history indicated that in 1939 Congress was broadening the kind of criminal intent that was required to prove the offense under 18 U.S.C. § 875(a). Although the district court did not specify what that intent element was, it did state that a "concerned citizen" who offered his services to obtain the release of a kidnapped person in return for a reward was not covered by the statute because of the criminal intent element of the offense and that appellee United States had presented sufficient evidence of appellant's having the requisite criminal intent under the statute for the district court to deny appellant's motion to dismiss the indictment. It is apparent that the district court treated 18 U.S.C. § 875(a) as having some kind of "bad faith" criminal intent element.

■ It should be obvious, however, that the portion of the Senate Report that dealt with the purpose of the 1939 Amendments to change the law to cover non-extortionate threats (as exemplified by the threat to blow up the home of the Governor of a Southern State if certain defendants in a criminal case were not released from custody) as well as extortionate threats did not relate to the part of the amended statute that is now 18 U.S.C. § 875(a), but to the newly created part of the amended statute that is now 18 U.S.C. § 875(c). The case of a non-extortionate threat is simply not relevant to a "demand or request for a ransom or reward" because implicit in the words "demand and request" for a "ransom or

---

**5.** The House Report contains almost identical language. Thus, the three paragraphs of the Senate Report quoted in this opinion is the primary history of the 1939 amendments to the now existing 18 U.S.C. § 875.

reward" is the attempt to obtain money or other things of value; the threat to blow up a Governor's home if certain defendants in a criminal case were not released from custody cannot be brought within language referring to a "ransom or reward." The conclusion follows that cases interpreting 18 U.S.C. § 875(c), e. g., *United States v. Bozeman,* 495 F.2d 508 (5th Cir. 1974), *United States v. LeVison,* 418 F.2d 624 (9th Cir. 1969), *United States v. Dutsch,* 357 F.2d 331 (4th Cir. 1966), *Seeber v. United States,* 329 F.2d 572 (9th Cir. 1964), *United States v. Holder,* 302 F.Supp. 296 (D.Mont.1969), *United States v. Pennell,* 144 F.Supp. 317 (N.D.Cal.1956), are not applicable to a case involving the interpretation of 18 U.S.C. § 875(a).

■■■ A close reading of the 1939 amended statute and the accompanying Senate Report should reveal that Congress considered the words "demand or request for ransom or reward for the release of any kidnapped person" to contain implicitly the meaning that there be an intent to extort present. When drafting subsection (a) of the 1939 Act, 18 U.S.C. § 408d, Congress was dealing with extortionate threats. Extortion is the obtaining of property by the use of serious threats. In a kidnapping case, the threat to the kidnapped person makes a "demand" for "ransom" extortionate.[6] In subsection (a) of the 1939 Act, Congress coupled the kind of extortionate demand made in a kidnapping case with the kind of extortionate demand made when a threat to kidnap or a threat to injure is communicated in an effort to obtain property, and to both kinds of extortionate demands Congress set the maximum punishment at twenty years imprisonment and a $5,000 fine. Consequently, the now existing 18 U.S.C. § 875(a), which was the first part of subsection (a) of the 1939 Act, has the same intent to extort element to the offense as the crime stated in the now existing 18 U.S.C. § 875(b), which was the second part of subsection (a) of the 1939 Act. *See United States v. Cooper,* 523 F.2d

8 (6th Cir. 1975). The district court misread the legislative history concerning the nature of the intent element of the offense stated in 18 U.S.C. § 875(a).

Appellant, perhaps recognizing the weakness of his contention that 18 U.S.C. § 875(a) defines a *malum prohibitum* offense, argues in the alternative that the intent to extort is the necessary intent element of the offense and that the indictment was thus insufficient because it did not charge him with having the intent to extort. We must now turn to the question whether the indictment properly charged appellant with ‧ the offense stated in 18 U.S.C. § 875(a).

### III

■■■ By his plea of *nolo contendere,* appellant was admitting every essential element of the offense well pleaded in the indictment. *Lott v. United States,* 367 U.S. 421, 426, 81 S.Ct. 1563, 6 L.Ed.2d 940 (1961). A *nolo contendere* plea is "an admission of guilt for the purposes of the case," *Hudson v. United States,* 272 U.S. 451, 455, 47 S.Ct. 127, 129, 71 L.Ed. 347 (1926), and "nothing is left but to render judgment, for the obvious reason that in the face of the plea no issue of fact exists, and none can be made while the plea remains of record." *United States v. Norris,* 281 U.S. 619, 623, 50 S.Ct. 424, 425, 74 L.Ed. 1076 (1930). *See North Carolina v. Alford,* 400 U.S. 25, 35–36 n. 8, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Nonetheless, on appeal in this case, appellant can question the jurisdiction of the court to render judgment, raising the issue of the sufficiency of the indictment.

The standard set by the Supreme Court for testing the sufficiency of the indictment was stated in *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974).

[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must de-

---

**6.** By including the "request" for "reward" language, Congress was attempting to cover all kinds of extortionate communications in a kidnapping case.

fend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Hagner v. United States,* 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932); *United States v. Debrow,* 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92 (1953). It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as "those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *United States v. Carll,* 105 U.S. 611, 612, 26 L.Ed. 1135 (1882).

Appellant makes two attacks on the sufficiency of the indictment. First, appellant argues that the indictment deprived him of fair notice of the charge against him because the wording of the indictment is ambiguous by not distinguishing between a demand for ransom and a request for a reward and indicating which appellant did. Appellant notes that the indictment does not track the statutory language in this regard. Second, appellant argues that the indictment did not charge him with the intent to extort, an essential element of the offense.

Appellant's first argument as to the sufficiency of the indictment has substance only if the second argument has merit. The failure to charge the intent to extort would raise an issue concerning the fair notice given by the indictment. If, however, an intent to extort was well pleaded, then appellant was on notice that he was charged with having made extortionate communications in connection with the kidnapping of William Niehous.

To determine whether the indictment did charge the essential element of intent to extort, we must examine the indictment. Count I of the indictment stated that the grand jury charged the following.[7]

On or about the 25th day of October, 1976, JAMES HELLER wilfully and knowingly did transmit and cause to be transmitted in interstate commerce from New York City, in the State of New York to Toledo, Ohio, in the Northern District of Ohio, Western Division, a telephone communication to Robert J. Towne, Jr., which said communication contained a demand and request for $50,000 as ransom and reward for the release of William F. Niehous, who had been kidnapped and was then held for ransom and reward.

In violation of Title 18, United States Code, Section 875(a).

■■■ We conclude that the indictment is fatally defective in that it does not charge the appellant with having had an intent to extort. If the word "wilfully," or some form thereof, were in juxtaposition to the word "demand," a strained argument could be made that since "when used in a criminal statute [wilfully] generally means an act done with a bad purpose," *United States v. Murdock,* 290 U.S. 389, 394, 54 S.Ct. 223, 225, 78 L.Ed. 381 (1933), *see also Felton v. United States,* 96 U.S. 699, 702, 24 L.Ed. 875 (1877),[8] appellant had implicitly been charged with an intent to extort. But such is not the case. In this indictment, the adverbs "wilfully" and "knowingly" are in juxtaposition to and were clearly intended to modify the verbs contained in the clause "transmit and cause to be transmitted in interstate commerce." In only a most tortured manner, and with a complete disregard for the most basic rules of grammatical construction, can it be argued that "wilfully and knowingly" modify the noun "demand," which is referred to in the indictment only as a portion of the communication "wilfully and knowingly" transmitted. Since it fails to charge an essential element of the crime defined by the statute, the indictment cannot stand.

■■■ Although not an element of the decision herein reached, we note that it is apparent from the record before us that had the intent to extort been charged in the

---

7. The five counts in the indictment were identical except for the dates.

8. *But see Slodov v. United States,* —— U.S. ——, ——, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978) (White, J., dissenting).

indictment and trial had thereunder, there would have been a failure of proof. In accepting the plea of *nolo contendere,* the district judge stated, ". . . I don't think he [made the telephone calls] with criminal intent that is assumed in an extortion kidnapping charge," and the Assistant United States Attorney stated that the government case would establish only that, "Upon his apprehension by the FBI [the appellant] admitted that he never had seen [the victim of the kidnapping]—he had no knowledge of his whereabouts—he had no contact with the gang—and he admitted that he had requested on each of the five occasions $50,000 in return for the release of [the victim]." Thus at most it could be said that appellant extended an offer to enter into a contract (his part of which he could not have performed) since in effect he said, "If you will pay, I will return the victim." But by no stretch of the imagination can it be said that he had the means, or that he represented that he had the means, much less the intent to extort. Non-threatening false pretenses, although despicable, are not extortionate.

The judgment is reversed and the case is remanded to the district court with instructions to dismiss the indictment.