UNITED STATES of America, Appellee,

v.

Gary Waldo MARKS, Appellant.

No. 78–1555.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 12, 1978.

Decided Oct. 18, 1978.

David R. Freeman, Federal Public Defender, and R. Steven Brown, Asst. Federal Public Defender, Springfield, Mo., for appellant.

Ronald S. Reed, Jr., U. S. Atty., and J. Whitfield Moody, Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before LAY, BRIGHT and ROSS, Circuit Judges.

BRIGHT, Circuit Judge.

Gary Waldo Marks appeals from his conviction after jury trial of knowingly and willfully mailing a letter threatening to injure the property of Charles E. Myers if $1,000 were not paid for the return of the property, in violation of 18 U.S.C. § 876

(1976). The district court[1] suspended sentence and placed Marks on three years' probation. On appeal the sole issue for review is whether the Government produced evidence sufficient to support the jury's guilty verdict. We affirm.

I.

On or about December 5, 1977, Charles E. Myers of Lynchburg, Missouri, noticed that important personal papers, including a savings account book, an automobile title, and insurance papers had disappeared from the glove compartment of his automobile. On or about December 7, 1977, Gary Waldo Marks admittedly prepared a handwritten letter and mailed it to Myers. A few days later Myers received the letter, which read as follows:

> I want $1,000.00 for this information on some important papers.
>
> 1– Savings account Book for Karen Sue Myers.
> 2– unpaid papers from Words.
> 3– car title to 73 ford.
> 4– 73 ford insurance papers
> 5– insurance papers from Commerce Bank.
>           insurance & Note Papers.
>
> You send me the Money.
> and this letter & envelope back to me.
> I'll send you your papers.
>
>           10 Days [circled]
>
> Don't let nobody else read this.
> or no papers.
> the sooner you reply, the sooner you
>           get your papers.

The letter's envelope disclosed the return name and address of "G. Marks, 235 Morton, Rd., Lebanon, Mo."

Upon receiving the letter, Myers contacted the county sheriff and agents of the Federal Bureau of Investigation. At the behest of those officials Myers responded to Marks in a letter dated December 17, 1977, which stated in part:

> I am willing to pay the reward but do not want to send cash in the mail. * * *
>
> I will meet you at the Nelson Community Building at 6:00 P.M. Monday with the money.

---

1. The Honorable William R. Collinson, United States District Judge for the Western District of Missouri, presiding.

At the appointed time Myers, accompanied by two FBI agents, appeared at the Community Building and met Cherry Lee Marks, the wife of Gary Marks. Mrs. Marks had in her possession Myers' missing personal papers and the Myers letter to Gary Marks. Shortly thereafter, FBI agents arrested Marks.

At trial the parties stipulated that Marks had mailed the alleged "extortionate" letter, but Marks contended that he did not intend to destroy the papers referred to in the letter or to deny Myers possession of them even if the $1,000 were not paid. Following his conviction, Marks moved for a judgment of acquittal on the grounds that the evidence was insufficient to establish guilt beyond a reasonable doubt, relying upon *United States v. Barcley,* 452 F.2d 930 (8th Cir. 1971), in which this court stated:

> Where a communication contains language which is equally susceptible of two interpretations, one threatening, and the other nonthreatening, the government carries the burden of presenting evidence serving to remove that ambiguity. Absent such proof, the trial court must direct a verdict of acquittal. [*Barcley, supra* at 933.]

In denying the motion, the district court ruled that certain language in the letter— "Don't let nobody else read this. or no papers"—combined with evidence indicating that (1) Marks had possession of Myers' papers when he wrote the letter, (2) Marks identified himself to Myers on the return address of the letter, and (3) destruction of the papers was the only manner in which Marks could prevent Myers' attempt to recover the papers by lawful means, established beyond a reasonable doubt that the letter conveyed a threat of injury.

II.

The relevant provision of 18 U.S.C. § 876 states:

> Whoever, with intent to extort from any person any money * * * know-

ingly so deposits or causes to be delivered * * * any communication * * * addressed to any other person and containing any threat to injure the property or reputation of the addressee or of another, * * * shall be fined not more than $500 or imprisoned not more than two years, or both.

The statute establishes three requirements pertinent to this case: (1) that Marks knowingly sent a letter; (2) that the letter was sent with the intent to extort money from Charles E. Myers; and (3) that the letter contained a threat to injure the property of Myers.

The first requirement presents no difficulty for the parties stipulated that Marks sent the alleged "extortionate" letter to Myers.

■ The question of extortionate intent raises an issue of little difficulty for, although Marks contends he was simply suggesting a reward for finding the papers when he wrote "I *want* $1,000.00 for this information on some important papers" (emphasis supplied). This contention has no support in the record. "I want $1,000.00" is a demand for money and carries clear extorsive overtones when found in the context of a letter strongly suggesting the destruction of important papers if not paid.[2]

■ In determining whether the letter contained a threat to injure the property of Myers, *United States v. Barcley, supra,* furnishes the standard:

> In order to sustain its burden of proof under § 876, the government must present evidence sufficiently strong to establish beyond a reasonable doubt that the communication in question conveys a threat of injury. Where a communication contains language which is equally susceptible of two interpretations, one threatening, and the other nonthreatening, the government carries the burden of presenting evidence serving to remove

---

2. Furthermore, Marks' instruction to send the letter and envelope back, "You send me the Money and this letter & envelope back to me[,]" contained the clear suggestion that the sender recognized the communication was wrongful, and not one legitimately seeking a reward.

that ambiguity. Absent such proof, the trial court must direct a verdict of acquittal. [*Barcley, supra* at 933.]

Mindful of this standard, we turn to Marks' contentions.

Marks argues that the Government failed to prove beyond a reasonable doubt that the letter contained a threat to injure the papers of Myers. He alleges that he did not intend to destroy the papers or to keep them from Myers if the money were not paid. Marks suggests that just as in *Barcley, supra,* the letter in this case, read in context, did not contain language sufficiently establishing a threat as to justify submission of the issue to the jury.

The circumstances of this case clearly distinguish it from *Barcley* and explain why a judgment of acquittal was proper in *Barcley* but is inappropriate here. In *Barcley* an imprisoned defendant sent a letter to his attorney reviling him for alleged incompetency in conducting the defendant's appeal. After instructing the attorney in the letter as to how the appeal should be handled, Barcley wrote:

"[T]he record has not been settled. And you better listen to me and not at me you "S.O.B." because I am not playing your game.

"In point of fact, as soon as I can get this case situated around in the position I want you are the first S.O.B. that will go, Sam Sechser [prosecuting attorney] will [be] next."

The letter concluded:

" * * * For you did not get my ok in sending this to the Supreme Court, which is to say that you better be on your Code of Ethics before you force me into an unsuitable position. * * * "

[*Barcley,* 452 F.2d at 932.]

In directing the district court to enter a judgment of acquittal in *Barcley,* this court considered the context in which the letter was written and decided that the Government offered no more than the equivocal language of the letter in attempting to establish the communication of a threat. The letter conveyed "a client's dissatisfaction with the services of his attorney" including "sharp criticism of the ethical conduct of his attorney and that of the prosecutor[.]" *Barcley,* 452 F.2d at 932–33; *see also Watts v. United States,* 394 U.S. 705, 707, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969). The Government evidence in *Barcley* was too scant to permit the case to reach the jury. By submitting the *Barcley* case to the jury, the district court subjected defendant to the risk of conviction on mere conjecture and speculation. *United States v. Brown,* 584 F.2d 252 at 260 (8th Cir. 1978); *United States v. Stephenson,* 474 F.2d 1353, 1355 (5th Cir. 1973).

In contrast, the letter in this case contained clear threatening overtones in the sentence "Don't let nobody else read this. or no papers[,]" and Marks circled the "10 days" limitation period, to presumably emphasize the danger of delay. The sender of the letter in this case retained possession of Myers' papers and, as distinguished from *Barcley,* possessed the immediate power to effect the threat he allegedly made. In addition, nothing in the Marks letter parallels the dissatisfaction and criticism conveyed in the *Barcley* communication so as to bring it within the purview of the first amendment.

Perhaps the distinction between *Barcley* and the instant case is best elucidated by answering the question, what was the point of the letters in each case? In *Barcley,* the letter emphasized the writer's vehement criticism of his attorney's professional conduct. In the instant case, the point of the letter was to force Myers to pay Marks $1,000 for the return of certain valuable papers intact.

█ Here, the Government fulfilled its obligation to present sufficient evidence to establish guilt beyond a reasonable doubt for submission of the case to the jury.

Accordingly, we affirm.