458

**UNITED STATES, Appellee,**

v.

**Joseph A.P. FARKAS, Captain, U.S. Army, Appellant.**

No. 49452.

CM 443602.

U.S. Court of Military Appeals.

March 31, 1986.

For Appellant: *Captain David L. Carrier* (argued); *Lieutenant Colonel William P. Heaston, Major Lawrence F. Klar, Captain Robert D. Wiechering* (on brief); *Irving Starr, Esq.* and *Captain Marcus C. McCarty.*

For Appellee: *Captain Alan L. Overton* (argued); *Colonel James Kucera, Lieutenant Colonel Adrian J. Gravelle, Major Thomas J. Leclair, Captain Diana Moore* (on brief); *Captain Andrew D. Stewart.*

---

*Opinion of the Court*

COX, Judge:

Appellant was tried by general court-martial at Fort Benjamin Harrison, Indiana, in August and September 1982. Contrary to his pleas, a military judge sitting alone found him guilty of extortion, and conduct unbecoming an officer by conspiring to commit extortion, in violation of Articles 127 and 133, Uniform Code of Military Justice, 10 U.S.C. §§ 927 and 933, respectively. He was sentenced to be dismissed from the armed forces. The convening authority approved this sentence and the Court of Military Review affirmed in a short-form opinion.

The charges in this case arose out of an incident involving a diamond ring belonging to Captain Mary L. Torgersen. On or about March 1, 1982, Captain Torgersen missed her ring. She enlisted the aid of Captain Johnie M. Yawn to find it. At his suggestion she advertised for the return of the ring. The ad included a promise of a reward and that "no questions [would be] asked." Throughout the ensuing weeks, Captain Torgersen received a series of anonymous communications concerning the missing ring.

On or about March 15 or 16, Captain Yawn gave Captain Torgersen a letter which he said had been left on the windshield of her automobile. The letter contained a detailed but inaccurate description of the ring and demanded a reward for its return. It said:

Be advised, I am impatient and would just as soon wholesale the diamond, so pick someone who can identify the diamond and lets be done with it.

On March 18, after consulting with agents of the Criminal Investigation Command (CID), Captain Torgersen placed an ad in the newspaper signaling her agreement and demanding photographs. She received a letter around March 29 acknowledging the ad and another letter around April 1 containing photographs of the ring and giving her detailed instructions for making the exchange for the ring.

On April 2, Captain Torgersen received an anonymous telephone call asking her why she had not placed an envelope on the windshield of her car as a signal for the exchange. She replied that she did not have the money. On April 7, she placed a white envelope on the windshield, and on April 9 she received a telephone call setting the time and date for the exchange as 8:00 a.m. on April 10. When she presented herself for the exchange, she was approached by Mr. John Denny, who showed her the ring. He was then arrested by the CID.

Mr. Denny implicated appellant in the scheme, stating appellant had offered him $100.00 to exchange the ring. Denny also admitted to making the two telephone calls to Captain Torgersen at the direction of appellant. He said appellant gave him the ring, drove him to the parking lot, and arranged for a later meeting. Appellant also showed him a telephone number which belonged to Captain Yawn.

Appellant denied any criminal intent in his role in the episode. He was on leave from February 27 to March 23. His first involvement was on April 2 when he assisted his friend, Captain Yawn, in returning the ring and claiming the reward for a non-commissioned officer assigned to the command.

Based on this chain of events, appellant was convicted of one charge of extortion under Article 127 and one charge of conspiring to extort under Article 133. He now complains that the pleadings were inadequate to charge the offenses and the evidence was insufficient to sustain a conviction. We granted review on the following four issues which have been renumbered to reflect the order in which they will be addressed:

I

WHETHER THE MILITARY JUDGE ERRED IN FAILING TO GRANT THE APPELLANT'S MOTION TO DISMISS THE SPECIFICATION ALLEGING CONDUCT UNBECOMING AN OFFICER AND A GENTLEMAN BY CONSPIRING TO COMMIT THE OFFENSE OF EXTORTION BECAUSE THE SPECIFICATION DOES NOT STATE AN OFFENSE.

II

WHETHER CHARGE II AND ITS SPECIFICATION (EXTORTION) FAIL TO STATE AN OFFENSE.

III

WHETHER THE MILITARY JUDGE ERRED IN FAILING TO GRANT THE DEFENSE MOTION FOR A FINDING OF NOT GUILTY TO CHARGE II AND ITS SPECIFICATION (EXTORTION)

AND CHARGE III AND ITS SPECIFICATION (CONDUCT UNBECOMING AN OFFICER AND A GENTLEMAN BY CONSPIRING TO COMMIT EXTORTION).

## IV

WHETHER THE EVIDENCE IS INSUFFICIENT AS A MATTER OF LAW TO PROVE THE APPELLANT GUILTY OF EXTORTION OR CONSPIRACY TO COMMIT EXTORTION.

We hold that appellant was properly charged and convicted and affirm.

## I

The first issue is whether the following specification of conduct unbecoming an officer under Article 133 of the Code states an offense:

> In that Captain Joseph A. P. Farkas, US Army, ... US Army Soldier Support Center and Fort Benjamin Harrison, ..., Indiana, did, at Fort Benjamin Harrison, ..., a US Army Post, between about 1 March 1982 and about 10 April 1982, conspire with Captain Johnie M. Yawn and Mister John A. Denny to commit an offense under the Uniform Code of Military Justice, to wit: extortion, *and in order to effect the object of the conspiracy the said Captain Johnie M. Yawn did wrongfully withhold possession of a diamond ring from Captain Mary L. Torgersen.*

(Emphasis added.) Appellant argues that "withholding" is a failure to act and that it is therefore not an "act" in furtherance "of the conspiracy" as is required by Article 81, UCMJ, 10 U.S.C. § 881. He also asserts that such conduct is not overt in the sense that it manifests the charged conspiracy was at work. Para. 160, Manual for Courts-Martial, United States, 1969 (Revised edition); *see Yates v. United States,* 354 U.S. 298, 334, 77 S.Ct. 1064, 1084, 1 L.Ed.2d 1356 (1957). We disagree.

Article 81 of the Code requires *inter alia* that the prosecution show appellant or one of his conspirators has done "an act to effect the object of the conspiracy." The object of the conspiracy alleged in this case was to communicate extortionate threats to Captain Torgersen. *See* Art. 127; *see generally* Note, *A Rationale of The Law of Aggravated Thefts,* 54 Colum.L.Rev. 84, 85 (1954). The defense does not particularly contend that the withholding of the ring by Captain Yawn could not possibly further the making of these threats.[1] *See United States v. Offutt,* 127 F.2d 336, 339 (D.C.Cir. 1942); *see generally Yates v. United States, supra.*

■ We hold that to withhold or conceal property from another to effect the communication of a threat to that property is an "act" within the meaning of Article 81. *See United States v. Xheka,* 704 F.2d 974, 989 (7th Cir.), *cert. denied,* 464 U.S. 993, 104 S.Ct. 486, 78 L.Ed.2d 682 (1983); *United States v. Eucker,* 532 F.2d 249, 254 (2d Cir.), *cert. denied,* 429 U.S. 822, 97 S.Ct. 73, 50 L.Ed.2d 84 (1976).

■ Appellant's second challenge to this specification is based on evidence in this case that Captain Yawn was withholding the ring from Captain Torgersen before they met to arrange its return. Accordingly, he asserts that the withholding of the ring does not manifest the charged conspiracy was at work but only maintenance of the "status quo." As a matter of law, an act done by the conspirators prior to their agreement is not sufficient to constitute the overt act required for a conspiracy conviction. *United States v. Offutt, supra* at 340. However, an allegation that this act was done to further the purpose of carrying out the conspiracy implies that it was done subsequent to the agreement and is enough to prevent the specification from being found insufficient on this basis. *Id.* at 339; *see generally United States v. Sell,* 3 U.S.C.M.A. 202, 11 C.M.R. 202 (1953). In view of the existence of comparable lan-

---

1. Captain Yawn's withholding of the ring from the possession of Captain Torgersen created the possibility that it could be wholesaled as threat-

ened. *Cf. United States v. Kauffman,* 14 U.S.C. M.A. 283, 34 C.M.R. 63 (1963).

guage in the challenged specification before us and the absence of a motion on the part of the defense to make this specification more definite and certain, we find this issue to be without merit.[2]

## II

■ The second issue concerns appellant's challenge to the following specification for not properly alleging extortion under Article 127 of the Code. It states:

In that Captain Joseph A. P. Farkas, US Army, ..., US Army Soldier Support Center and Fort Benjamin Harrison, ..., Indiana, did, at Fort Benjamin Harrison, Indiana, a US Army post, between about 15 March 1982 and about 10 April 1982, with intent unlawfully to obtain $2,500.00, *communicate to Captain Mary L. Torgersen a threat to sell her diamond ring.*

(Emphasis added.) Appellant asserts that a threat to sell the victim's diamond ring is not a threat to injure the person, property, or reputation of another as is required by Article 127. *See generally United States v. Frayer*, 11 U.S.C.M.A. 600, 29 C.M.R. 416 (1960).

We note first that Article 127 does not delineate the types of threats that are sufficient to constitute an offense under this codal provision. This problem was called to the attention of Congress. Hearings on S. 857 and H.R. 4080, Subcomm. of Senate Armed Services Comm., 81st Cong., 1st Sess. 277–78 (1949), reprinted in *Index and Legislative History, Uniform Code of Military Justice.* Also a limiting amendment in this regard was proposed during the floor debate on the Code but was never adopted. 96 Cong.Rec. 1308, 1412 (1950). In this context, we are inclined to broadly construe the word "threats" in Article 127.

In addition, the issue in *United States v. Frayer, supra,* was whether the offense of communicating a threat under Article 134, UCMJ, 10 U.S.C. § 934, was limited to a threat of physical violence. Although disagreeing on other points, all three judges broadly defined a threat in terms of potential injury to the person, property or reputation. *Id.* at 604 (Quinn, C.J.); 606–07 (Latimer, J.); 610 (Ferguson, J.), 29 C.M.R. at 420, 422–23, 426, respectively. None of the judges indicated that the threat required for an extortion offense under Article 127 should be viewed more narrowly. Consistent with these opinions, it is our view that interference with a person's right to immediate possession of her property is the type of injury contemplated by this statute. *See United States v. Frayer, supra* at 607, 29 C.M.R. at 423 (separate opinion of Latimer, J.). *See also United States v. Lance,* 536 F.2d 1065, 1068 (5th Cir.1976); *see generally* Note, 54 Colum.L. Rev., *supra* at 89–91.

## III

The next issue in this case is whether the military judge erroneously denied appellant's motions for findings of not guilty to the conspiracy charge and the extortion charge. *See generally* para. 71a, Manual, *supra; see* Art. 36, UCMJ, 10 U.S.C. § 836. He generally asserts that the prosecution showed only that he was an accessory after the fact as a matter of military law (Art. 78, UCMJ, 10 U.S.C. § 878) to the extortion offense (Art. 127) and not his criminal liability as a conspirator (*see* Art. 81) or as a principal to these offenses (Art. 77, UCMJ, 10 U.S.C. § 877; *see United States v. Meester,* 762 F.2d 867, 878 (11th Cir.1985)).

The basis of appellant's argument is his assertion that the offense was complete on March 16, 1982. *But see United States v.*

2. There is a difference between failing to allege a sufficient overt act for a conspiracy offense and a failure to prove this overt act was in furtherance of the conspiracy as alleged. *See United States v. Kauffman, supra* at 292–94, 34 C.M.R. at 72–74. Evidence that Yawn withheld the ring prior to his agreement with appellant was some basis to conclude that his subsequent withholding was not an act in furtherance of the conspiracy. However, as indicated later in this opinion, there was ample evidence of other overt acts not alleged which would support a finding that this subsequent withholding was in furtherance of the charged conspiracy to extort. *Cf. United States v. Collier,* 14 M.J. 377, 381–82 (C.M.A.1983) (Everett, C.J., dissenting).

*Clark,* 732 F.2d 1536, 1539 (11th Cir.1984); *United States v. Jackson,* 20 M.J. 68 (C.M. A.1985). He contends that evidence of his involvement with this ring on or after April 2, 1982, is insufficient as a matter of military law to establish a prima facie case of his guilt for these earlier completed offenses. *Contra Skelly v. United States,* 76 F.2d 483 (10th Cir.), *cert. denied,* 295 U.S. 757, 55 S.Ct. 914, 79 L.Ed. 1699 (1935).

Appellant was not narrowly charged with conspiring to commit extortion prior to March 16, 1982, or with extortion on that date. Instead, it was alleged that he conspired to commit extortion "between about 1 March 1982 and about 10 April 1982." He was further charged with extortion "between about 15 March 1982 and about 10 April 1982." Although no evidence may have been presented by the prosecution that appellant conspired to extort and participated in the communication of the extortionate letter on or before March 16, 1982, evidence of a later conspiracy and subsequent extortionate threats during the alleged time period would be a sufficient basis for the trial judge to deny these motions. *Cf. United States v. Wray,* 17 M.J. 375 (C.M.A.1984).

Appellant nevertheless asserts that the prosecution in its case-in-chief evidenced, if at all, one extortionate act which was complete as a matter of military law on March 16, 1982. *See* para. 206, Manual, *supra.* It is true that Article 127 is the type of extortion statute which prohibits the communication of the extortionate threat itself without requiring misappropriation of property as a result of this threat. *See* Note, 54 Colum.L.Rev., *supra* at 85. *Cf.* Art. 122, UCMJ, 10 U.S.C. § 922. It is also true that the Government evidenced the fact that the alleged victim received such a

threat from an unknown person on March 16, 1982. However, Article 127 generally prohibits "threats," which suggests that the repetition of an earlier threat, either expressly or impliedly, by a different person can also constitute the *actus reus* of this offense. In this light, the telephonic communications by Denny on April 2 and April 9, 1982, which invoked the password linking them to the earlier letters and renewed the earlier demands for $2,500.00, can also be properly considered additional extortionate threats.

■ The remaining issue concerning the defense motions for findings of not guilty is whether the prosecution introduced some evidence that appellant conspired and participated in the extortionate communications on April 2 and April 9, 1982. Denny testified that appellant, on April 2, 1982, said he had agreed as a favor to assist his friend in returning the ring for money. He further testified that appellant offered him money for his help in this matter; provided him a password[3] to be given to the alleged victim which would link these telephone calls to the earlier communications by letter; told him to renew the demand for the money previously agreed on and provided him additional instructions to be given the victim concerning the return of the ring for money. This is some evidence that appellant, on or before April 2, 1982, conspired to extort, and on April 2 and April 9, 1982, did commit the crime of extortion. *See* Art. 77. *Cf. Pinkerton v. United States,* 328 U.S. 640, 645, 66 S.Ct. 1180, 1183, 90 L.Ed. 1489 (1946); *United States v. Gaeta,* 14 M.J. 383, 391 (C.M.A.1983).[4]

IV

The final issue for review is whether there is sufficient evidence in the record of

---

3. Denny testified that he was instructed by appellant to telephone Captain Torgersen and ask "[w]hy wasn't the envelope on the car?" or "on the windshield" of the car. He also testified that appellant told him to use this question "kind of like a password." A letter dated March 30, 1982, provided that the victim "signal" her intentions to proceed "by putting a white envelope under ... [her] windshield." Finally, the alleged victim testified that Captain Yawn told

her that the letter of March 16, 1982, was found in an envelope left on the windshield of her car.

4. We disagree with the following statement in appellant's final brief:

In this case it is obvious both from the Government's charges and from the evidence presented, that it sought to prove appellant criminally liable for both of the offenses of which he was convicted on the basis of his participation as a conspirator.

trial for the trial judge to reject the various defenses raised by appellant's testimony. This is a question of law, and our review is limited to determining whether there is some competent evidence from which the factfinder could find, beyond a reasonable doubt, that the basis of these defenses did not exist. Para. 214, Manual, *supra.*

Appellant asserts that there was no evidence that he wrote or even knew at any time about the threatening letter received by Captain Torgersen on March 16, 1982. On the contrary, he notes that there was uncontroverted evidence in the record of trial that he was not in the state of Indiana when the letter was written or received by the victim. He argues that without such evidence his conviction for conspiracy to extort and extortion must be reversed.

There was no direct evidence that appellant knew that the initial letter sent to Captain Torgersen on March 16, 1982, contained a threat to sell her ring to a third party; however, there was circumstantial evidence that he knew about this threat. *See generally* 2 Wigmore, *Evidence* §§ 244–245 (Chadbourne rev. 1979). He admitted on the stand that he was told by Captain Yawn that earlier letters were sent to Captain Torgersen, the rightful owner of the ring. He also admitted that he was briefed on the contents of these letters by Captain Yawn but he denied that he was informed about any threat. However, other evidence in the record suggests that he knew about the threatening nature of the first letter. First, Denny and appellant both testified that complete anonymity was an essential part of the plan to acquire money from Captain Torgersen. Second, both Denny and appellant testified as to appellant's clandestine devices to insure their identities were not revealed. Third, both Denny and appellant testified that appellant instructed Denny not to return the ring if the money was not paid by the

victim. Fourth, appellant admitted that he was offered $100.00 by Captain Yawn for his assistance in this matter. Fifth, Denny testified that appellant provided him two different stories accounting for the possession of this ring by his as-yet-to-be-identified friend. Although appellant offered innocent explanations for his conduct, his credibility was a matter for the factfinder to determine. Standing alone, the above evidence was a sufficient basis for the trial judge to conclude that appellant knew about the threatening letter of March 16, 1982.

Appellant next asserts that there was no evidence that he or his alleged co-conspirators ever intended to sell the ring to a third party. In this regard, he notes that the prosecution offered no evidence rebutting his testimony that he intended to return the ring even if the money was not paid. He further asserts that the purported threatening language in the first letter was at most a wish on the part of its author that Captain Torgersen act "expeditiously." *See generally United States v. Heller,* 579 F.2d 990 (6th Cir.1978).[5]

The prosecution was required to prove the existence of an intent to acquire $2,500.00 by means of a threat. Para. 206, Manual, *supra.* It was not required to prove that appellant and his alleged confederates actually intended to carry out this threat if the money was not paid. *See United States v. Lincoln,* 589 F.2d 379, 381 (8th Cir.1979); *United States v. Chatman,* 584 F.2d 1358 (4th Cir.1978). Moreover, the trial judge was not required to accept appellant's characterization of the communication as non-threatening. *United States v. Marks,* 585 F.2d 899 (8th Cir. 1978). He could properly consider the language employed (*see United States v. Cotner,* 657 F.2d 1171, 1173 (10th Cir.1981)) and its connotation to a reasonable recipient familiar with the context of the commu-

---

5. The letters in part speak in terms of contract, sale, and reward for return of the diamond ring. However, unlike the situation presented in *United States v. Heller,* 579 F.2d 990 (6th Cir.1978), the Government presented evidence that the conspirators had the means to extort (posses- sion of the ring), represented this fact to the victim (by letter and photographs), and communicated their intention to dispose of the ring to a third party if money was not paid. *See United States v. Marks,* 585 F.2d 899 (8th Cir.1978).

nication. *Martin v. United States*, 691 F.2d 1235, 1240 (8th Cir.1982), *cert. denied*, 459 U.S. 1211, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983). We hold that the language of the first letter sent to the alleged victim and other evidence surrounding this communication and its successors were a sufficient basis for concluding intentional threats were made. *United States v. Marks, supra.*

Finally, appellant argues that the prosecution offered no evidence to rebut his special defense of a mistake of fact. Para. 216*i*, Manual, *supra*. The prosecution of course was required to prove beyond a reasonable doubt that this special defense did not exist. Para. 214, Manual, *supra*. The evidence noted above and the factfinder's assessment of appellant's credibility were a sufficient basis for rejection of this defense.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT concurs.